**Miguel VAZQUEZ and Jose Maldonado, Plaintiffs,**

v.

**EASTERN AIR LINES, INC., Defendant.**

**Ramon A. LAVANDERO, Plaintiff,**

v.

**EASTERN AIR LINES, INC., Defendant.**

Civ. Nos. 74–1041, 74–1042.

United States District Court, D. Puerto Rico.

Dec. 30, 1975.

**1354**

George L. Weasler, Santurce, P. R., for plaintiffs.

Francisco Ponsa Feliú, San Juan, P. R., for defendant.

## OPINION AND ORDER

PESQUERA, District Judge.

These cases are before the Court on motion of the defendant to dismiss for lack of subject matter jurisdiction. Having similar factual situations and common legal issues, they were consolidated for resolution by order of the Court dated October 16, 1975.

Plaintiffs invoke the jurisdiction of this Court under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

These actions were brought by plaintiffs, former employees of the defendant, seeking an order requiring defendant to reinstate them to the jobs from which they were discharged or to a substantially equivalent position, and to recover sums due them by reason of such discharge, together with costs and reasonable attorney's fees. The complaints allege that defendant discharged plaintiffs solely on account of their age and in violation of ADEA, 29 U.S.C. § 623(a)(1). The complaints also allege and the answer admits that within 180 days of their discharge, plaintiffs notified the Secretary of Labor, United States Department of Labor of their intent to sue defendant, and that the instant actions were brought not less than sixty days after such notification. 29 U.S.C. § 626(d)(1).

The defendant specifically moved to dismiss on the grounds this Court lacks subject matter jurisdiction because the plaintiffs failed to seek redress from the appropriate state agency at least sixty days prior to instituting these suits as required by 29 U.S.C. §§ 626(d) and 633(b).

The instant case thus presents significant questions concerning the proper construction and interpretation of the ADEA.

We turn first to a consideration of the legislative history of the ADEA. While there is some similarity in language between Section 14(b) of the ADEA and Section 706(c) of Title VII of the Civil Rights Act of 1964, the Federal age discrimination law "is embodied in a separate act and has its own unique history [which] at least counsels the examiner to consider the particular problems sought to be reached by the statute". *Laugesen v. Anaconda Co.*, 510 F.2d 307 (CA 6, 1975). Although Congress incorporated many of the Title VII remedial prohibitions which had been included in the Administration's age discrimination bill, it specifically rejected the proposed administrative agency and enforcement procedure, which were analogous to the EEOC

and Title VII. Compare the original (i. e., Administration) version of S. 830, 90th Cong. 1st Sess. (1967) in 113 Cong. Rec. 2794–2796. The primary reason for such rejection, as explained by Senator Javits[1], was that the approach contemplated in the Administration bill would cause the same delays "which plague so many of our agencies such as the EEOC and the NLRB. . . . By utilizing the courts rather than (administrative bodies) as the forum to hear cases arising under the law, these delays may be largely avoided". Such delays were felt to be "particularly" unfortunate "in the case of older citizens to whom, by definition, relatively few productive years are left". (Statement of Senator Javits in Hearings Before the Subcommittee on Labor of the Committee on Labor and Public Welfare, United States Senate, on S. 830, S. 788, 90th Cong. 1st Sess. at 24 (1967), reprinted in 113 Cong.Rec. 7076).

Viewed in this legislative context, and bearing in mind the Congressional concern to avoid the delays occasioned by administrative proceedings, as well as the different structure of the two statutes, discussed below, it is readily apparent that the Title VII enforcement procedures cannot be fairly equated with those of the ADEA. To the contrary, the ADEA is a self-contained statute which incorporates the enforcement techniques of the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 209, 211, 216(b) and (c), 217) "with appropriate modifications necessary to accommodate them to the purposes of this legislation". S.Rep.No. 723, 90th Cong., 1st Sess. at 13–14 (1967) (individual views of Sen. Javits).

Section 14(b) of the ADEA and Section 706(c) of Title VII are not parallel provisions. Section 706 of Title VII sets forth procedural steps and time tables which an aggrieved person must follow before filing suit to enforce rights protected under that act. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The comparable provision in the ADEA is Section 7, not Section 14, since it is Section 7 which sets forth the jurisdictional prerequisites for filing suit. Significantly, unlike Section 706 of Title VII, Section 7 does not make the filing of an administrative charge with the appropriate State agency a jurisdictional step. Its only requirement in the case of an aggrieved individual is that the Secretary of Labor be afforded timely notice of an intent to file suit. *Powell v. Southwestern Bell Telephone Company,* 494 F.2d 485, 488 (CA 5, 1974). The sole purpose of this requirement is to enable the Secretary to eliminate the alleged violation through informal method of conciliation, conference and persuasion, if that is possible, before suit is filed, and to ensure that the Secretary expends his conciliation resources only on alleged unlawful practices which are reasonably current.

In contrast, Section 14 of the ADEA does not set forth any jurisdictional steps for instituting suit, but deals solely with the relationship between Federal and State laws. Thus, although Section 14 borrows language from Section 706(c) of Title VII, this language—when removed from the jurisdictional placement which it has in Title VII and also from the companion section which requires initial deferral to State agencies even where the EEOC itself initiated the charge (Section 706(d), 42 U.S.C. § 2000e–5(d))[2]—contains no suggestion that resort to State law is a jurisdiction-

---

[1]. As was correctly noted by Senator Yarborough (Chairman of the Subcommittee on Labor, who sponsored and managed S. 830 for the Administration, 113 Cong.Rec. 2467, 31252) the far-reaching changes in the ADEA enforcement procedure were the direct result of "amendments offered in the Committee by the distinguished senior Senator from New York [i. e., Senator Javits], which were adopted and made a part of the Senate bill" (113

Cong.Rec. 35055). See S.Admt. Nos. 123–129, 90th Cong., 1st Sess. (March 16, 1967), reprinted in 113 Cong.Rec. 7077–7078.

[2]. Under the ADEA, on the other hand, it is clear beyond question that nothing similarly requires the Secretary of Labor to defer to State agencies prior to filing an age discrimination suit under the Act.

al prerequisite to the filing of an ADEA action. This language simply states that "no suit may be brought under section [7] of this Act before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . .". Under the plain meaning of these words, the limitation upon the right to file suit under the ADEA would be applicable *only* if proceedings had *already* been initiated under existing State law. However, nothing in this language says that State proceedings must first be initiated—i. e., that a plaintiff must first attempt to utilize available state remedies—before filing suit under the ADEA. Indeed, such a requirement would be inconsistent with the Congressional concern to eliminate the delays occasioned by administrative proceedings which other discriminatees had encountered in bringing their cases to the courts under Title VII.

Not only is there nothing in the language of the ADEA to require this result, but the stated purpose of Section 14 (as indicated by its heading, "Federal-State Relationship", and by its placement at the end of the Act just before the "Effective Date" and "Appropriations" provisions (Sections 15 and 16 (29 U.S.C. §§ 634 and 621 note) is to preserve concurrent Federal and State jurisdiction in the area of age discrimination.[3] Thus, Section 14(a) (29 U.S.C. § 633(a)), for which there is no comparable provision in Title VII, provides that: "Nothing in this [Act] shall effect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this [Act] such action shall supersede any State action".

Pointing to this provision, Judge Garth stated in his concurring opinion in *Goger v. H. K. Porter Company, Inc.*, 492 F.2d 13 (CA 3, 1974) that he could "not believe that it was the intent of Congress to require, prior to the institution of a Federal action, the commencement of a State proceeding which, under § 633(b), need not be concluded and which in any event would be superseded by the filing of the Federal action under § 633(a)".

This construction of the plain statutory language is confirmed by the legislative reports which, in summarizing Section 14 of the ADEA, stated only that the section "provides for concurrent Federal and State actions, except that in States having laws prohibiting discrimination in employment because of age, no suit may be brought under this act before the expiration of [sixty] days after proceedings have been commenced under the State law . . . unless such proceedings have been earlier terminated, and commencement of an action under this act shall be a stay on any State action previously commenced". H.Rep. No.805, 90th Cong., 1st Sess. at 6 (1967), reprinted in 1967 U.S.Code Cong. & Admin.News at pp. 2218–2219.

In a similar vein, former Secretary of Labor, W. Willard Wirtz, in a prepared response to questions submitted by Senator Javits, noted that the preservation of the jurisdiction of State agencies in Section 14 was designed to allow such agencies to impose prohibitions against age discrimination in employment stricter than those provided under the Federal law. Hearings Before the Subcommittee on Labor of the Committee on Labor and Public Welfare, United States Senate, on S. 830, S. 788, 90th Cong., 1st Sess. at 48 (1967).

---

**3.** As pointed out in both the Senate and House Reports, a Department of Labor survey conducted in 1963 disclosed that 24 States and the Commonwealth of Puerto Rico had age discrimination legislation similar to the bills pending before Congress in 1967, but that their effectiveness was difficult to measure accurately. S.Rep.No.723, 90th Cong., 1st Sess. at 2–3 (1967); H.R.Rep.No.805, 90th Cong., 1st

Sess. at 2–3 (1967), reprinted in 1967 U.S.Code Cong. & Admin.News, pp. 2213, 2215. The legislative reports also noted that "in a canvass of State officials regarding the advisability of Federal action against employment discrimination on account of age, most operating officials perceived advantages in a national policy against such discrimination" (Ibid.).

Subsequently, during debate on the bill, Senator Javits, in addressing "the question of any conflict which might develop in the administration of the law as related also to the Civil Rights Act of 1964" (i. e., Title VII) states that "[t]he laws will operate completely independently of each other, as will the *enforcement procedures*" (113 Cong.Rec. 31255, emphasis added). Senator Yarborough, Chairman of the Subcommittee on Labor, as well as the floor manager and prime sponsor for the Senate Bill, expressly concurred in Senator Javits' remarks (Ibid.).

The legislative history of the ADEA is thus devoid of any indication that Congress intended to restrict an individual's right to file suit under the Federal law to cases in which proceedings had first been commenced under State law, and this indication cannot be supplied by looking at the legislative history of Title VII. Not only is the legislative history of these two statutes different[4], but the intent of Section 14(b) of the ADEA and Section 706(c) of Title VII, although they use comparable language, is, as we have shown above, also different. So far as the ADEA is concerned, the sole Congressional purpose underlying the enactment of Section 14 was to give the State time to act on a complaint if the aggrieved chose to proceed there first. To hold otherwise would be to create a procedural pitfall for unsuspecting individuals which could easily serve, as it did in the instant case (as well as in *Goger, McGarvey, Vaughn* and *Sagner*[5] to deprive aggrieved individuals of their day in court, thereby thwarting the objective of this remedial legislation, whose declared purpose, as stated in Section 2(b) of the Act (29 U.S.C. § 621(b)), is "to promote the employment of older [workers] based on their ability rather than age" and "to prohibit arbitrary age discrimination in employment". See *Hodgson v. First Federal Savings & Loan Association of Broward County*, 455 F.2d 818, 820 (C.A.5, 1972). See also, S.Rep. No.723, 9th Cong., 1st Sess. at 1–2 (1967); H.R.Rep.No.805, 90th Cong., 1st Sess. at 1–2 (1967), reprinted in 1967 U.S.Code Cong. & Admin.News 2213–2214.

It is imperative at this point, that examination be made of the Commonwealth of Puerto Rico statutes regarding age discrimination.

**29 LPRA 146—Discrimination for race, color, creed, birth or social position**

"Any employer who discharges, suspends, or demotes his employee, or reduces the salary of, or imposes or attempts to impose more burdensome working conditions on, his employee, or who refuses to employ or re-employ any person by reason of advanced age, as the latter is hereinafter defined, or by reason of the race, color, creed, birth or social position of the employee or applicant for employment: (a) shall incur civil liability (1) for a sum equal to twice the amount of the damages sustained by the employee or applicant for employment on account of such action; (2) or for a sum not less than one hundred (100) dollars nor more than one thousand (1,000) dollars, in the discretion of the Court, if no pecuniary damages are determinable; (3) or twice the amount of the damages

---

**4.** Although Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), has been uniformly construed to require primary resort to State procedures, this construction accords with the section's legislative history which—unlike the ADEA—clearly shows that Congress intended the appropriate State agencies to be given the first opportunity to redress unfair employment practices covered by Title VII. See *EEOC v. Union Bank*, 408 F.2d 867, 869–870 (C.A.9, 1968) and the court's statement in *DuBois v. Packard Bell Corp.*, 470 F.2d 973, 975 (C.A.10, 1972), that "if the legislative history of Title VII were not so manifestly clear as to remove all doubt, the liberal interpretation accorded remedial legislation of this type might leave some room for argument as to the meaning" of the deferral provision.

**5.** *McGarvey v. Merck & Co.*, 3 Cir., 493 F.2d 1401; *Vaughn v. Chrysler Corp.*, D.C., 382 F.Supp. 143; *Garcés v. Sagner International, Inc.*, not yet reported (D.P.R. Dec. 2, 1974) app. pndg. CA1, No. 75–1004; *Negrón et als. v. Pan American World Airways*, not yet reported (D.P.R. Dec. 2, 1974) app. pndg. CA1, No. 75–1005.

sustained if it were under the sum of one hundred (100) dollars; and, (b) he shall, also, be guilty of a misdemeanor and shall, upon conviction, be punished by a fine not less than one hundred (100) dollars nor more than five hundred (500) dollars, or by imprisonment in jail for a term not less than thirty (30) days nor more than ninety (90) days, or by both penalties, in the discretion of the Court.

The court may, in the judgment passed on civil actions brought under the preceding provisions, direct the employer to reinstate the employee in his former employ and to stop and desist from the act involved.—June 30, 1959, No. 100, p. 284, § 1, eff. June 30, 1959."

29 LPRA 149—Enforcement

"The Superior Court and the District Court shall have concurrent original jurisdiction in all cases arising under sections 146–151 of this title. Civil claims may be prosecuted by ordinary action or through the complaint proceeding established by Act No. 10 of Nov. 14, 1917, as heretofore or hereafter amended.

The claims that several or all workers or employees or applicants for employment may have against a common employer or labor union, may be joined in one sole action.

The Secretary of Labor may, on his own initiative, or at the request of one or more workers or employees or applicants for employment having an interest in the matter, and in representation and for the benefit of one or more of them who are undergoing similar circumstances, order the payment of any sum owing to them, or the fulfillment of any right conferred by sections 146–151 of this title. Any worker or employee or applicant for employment having an interest in the action may intervene in any suit so instituted by the Secretary of Labor, who, likewise, may intervene in any action brought by any worker or employee or applicant for employment under the terms of sections 146–151 of this title.

In any judgment passed against any employer or labor union the latter shall be imposed costs and a reasonable sum which shall never be under one hundred (100) dollars for attorney's fees, if the attorney were not one from the Department of Labor.—June 30, 1959, No. 100, p. 284, § 4, eff. June 30, 1959."

29 LPRA 150—Department of Labor, Secretary, duties

"The Secretary of Labor is hereby imposed the duty to see to the enforcement of sections 146–151 of this title.

Labor Department attorneys may act as prosecutors, with all the powers and authority conferred upon district attorneys, in all criminal actions arising under the provisions of sections 146–151 of this title.—June 30, 1959, No. 100, p. 284, § 5, eff. June 30, 1959."

Commonwealth of Puerto Rico Code of Civil Procedure.

The enforcement of rights granted under the Commonwealth statute (29 LPRA 149) makes reference to "Act No. 10 of November 14, 1917, as heretofore or hereafter amended". Act No. 10 of November 14, 1917 is found in 32 LPRA 3118, et seq. The relevant sections are the following:

32 LPRA 3118—Filing of complaint; parties; jurisdiction

"Whenever a workman or employee shall find it necessary to claim from his employer any equity or benefit, or any sum on account of compensation for work or labor done for said employer, or for compensation in case said workman or employee has been discharged without justified cause, he may appear before the part of the District Court or of the Superior Court, as the case may be, that he may choose, for the place where the work was done or where said workman or employee resides on the date of the claim, and file a complaint against the employer, which complaint shall be made out or filled in, as the case may be, by the judge or the secretary of the court, and the workman or employee shall

set forth therein the facts upon which the claim is founded.

In the exercise of any action that may be brought under the procedure set up by sections 3118–3132 of this title, the Secretary of Labor may sue, motu proprio or at the instance of one or more workmen or employees having an interest in the matter, and on behalf and in representation of one or more of such workers or employees who are in similar circumstances, and he may also constitute himself into complainant or intervener in any claim initiated under the procedure established in sections 3118–3132 of this title.

.        .        .        .        .

The complaint may include the claims of all workmen and employees of the same employer who failed to receive their equities, benefits, or wages due on the same work; Provided, That the filing of a complaint by one or more workmen or employees, or by the Secretary of Labor in their behalf, shall not preclude the filing of other actions by or on behalf of other workmen or employees.

The District Court shall take cognizance of every complaint in which the amount in dispute does not exceed two thousand five hundred (2,500) dollars exclusive of interest, costs, expenses, and attorney's fees; Provided, That if the complaint is filed in the District Court and the amount in dispute exceeds two thousand five hundred (2,500) dollars, exclusive of interest, costs, expenses, and attorney's fees, the judge shall, if so requested by any of the parties, order that the complaint be forthwith remanded to the pertinent part of the Superior Court where the case shall be heard.—Oct. 17, 1961, No. 2, p. 447, § 1, eff. Oct. 17, 1961."

32 LPRA 3122—Notice to and intervention by Secretary of Labor

"The court secretary shall send a copy of any complaint filed under the procedure established by sections 3118–3132 of this title as well as of the order setting the date for the hearing, to the Secretary of Labor, who may intervene in the proceedings through any of the attorneys of the Department of Labor.—Oct. 17, 1961, No. 2, p. 447, § 5, eff. Oct. 17, 1961."

As can be seen from the relevant and quoted portions of the Commonwealth of Puerto Rico Civil Code, a plaintiff has direct access to the State court when he believes he has been discriminated against because of age; the Commonwealth Secretary of Labor has direct access to the State courts; and either may intervene in the other's action but neither has authority to stop the other's action. (Under the Federal Act 626(b), the right of an individual to bring an action terminates upon commencement of an action by the Secretary). Nor is there any provision for the Secretary to engage in conciliation, etc. Notice to the Secretary of Labor that plaintiff or other claimant has an action is provided after the action has been commenced when the Clerk of the appropriate court so advises.

Undoubtedly, various State statutes all vary. Those of Pennsylvania and New Jersey referred to in *Goger v. H. K. Porter Company, Inc.*, 492 F.2d 13 (CA3, 1974) and *McGarvey v. Merck & Co.*, supra, have definite time limitations for filing grievances and action taken is solely by the agency. In this proceeding the plaintiffs are given a direct action remedy and need not rely on State action or proceedings.

The illogic of the defendant's argument is clearly evident. The Commonwealth statutes have no requirement that an aggrieved person give the Secretary of Labor notice of a complaint or grievance. The only reference to a "notice" is provided in 32 LPRA 3122 which provides, "The court secretary shall send a copy of any complaint filed   .   .   . to the Secretary of Labor, who may intervene in the proceedings through any of the attorneys of the Department of Labor". Under the defendant's view, the plaintiffs would have been forced to

**1360**

file a complaint in the local courts which would have then resulted in the clerk of the court notifying the Commonwealth Secretary that an age discrimination suit had been commenced. After such filing of the complaint with the court, however, the plaintiffs would be free to immediately withdraw such complaint and file then notice of intent to sue with the United States Department of Labor. Congress could not have contemplated or expected such a useless and unusual procedure. We have carefully read *Curry v. Continental Airlines*, 513 F.2d 691 (CA9, 1975) and find the arguments therein, concerning the local apparatus for handling age discrimination complaints, of particular pertinence to the situation here. The Commonwealth of Puerto Rico has not made a specific institutional commitment toward dealing with age discrimination complaints. No agency was specifically instructed by the legislature to deal with such problems. The general power of enforcement of·the employment laws given to the Commonwealth of Puerto Rico Department of Labor does not reflect the concern with the specific problem of age discrimination required by 633(b). On the State level the Secretary of Labor does not have exclusive jurisdiction to process age discrimination complaints as any aggrieved individual may proceed quite independently.

On the basis of the legislative history of the Age Discrimination in Employment Act of 1967, a reading of the applicable Commonwealth of Puerto Rico laws, and their interpretation in line with *Curry*, supra, we believe, with Judge Garth in *Goger*, supra, that we should adopt a straight forward approach and interpretation of this legislation so as to permit immediate recourse to our Courts.

The motions for summary judgment are denied.