**Duane BERTRAND, Plaintiff,**

v.

**ORKIN EXTERMINATING COMPANY, INC., Defendant.**

**No. 76 C 1337.**

United States District Court, N. D. Illinois, E. D.

Aug. 26, 1976.

John C. Ruppert, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for plaintiff.

Fred R. Kimmel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

Duane Bertrand, the plaintiff in this action, has brought suit against Orkin Exterminating Company, Inc., alleging that he was demoted and constructively discharged by the defendant because of his age in violation of the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* The defendant has moved to dismiss the complaint or in the alternative to strike portions thereof and for a more definite statement.

### I. *Motion to Dismiss*

The motion to dismiss charges that the plaintiff has failed to allege satisfaction of a purported jurisdictional prerequisite set forth in § 14(b) of the Act, 29 U.S.C. § 633(b).[1] This provision, which is headed "Limitation of Federal action upon com-

---

1. § 633(b) provides:

"In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such dis- criminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided,* That such sixty-day period shall be ex-

mencement of State proceedings", applies when two conditions are satisfied. (1) The state must have a law prohibiting age-based discrimination. (2) There must be a state authority authorized to grant or seek relief from age-discrimination.

The defendant asserts that Illinois law satisfies these two conditions and that as a result this court cannot obtain jurisdiction in an age-discrimination case until sixty days after the commencement of proceedings under the state law.

The construction of § 633(b) has been the subject of considerable dispute. While various courts have attempted to harmonize their opinions, it is nonetheless evident that there is a substantial split of authority on this matter.

At one extreme may be found a case such as *Vaughn v. Chrysler Corporation,* 382 F.Supp. 143 (E.D.Mich.1974), which analogizes § 633(b) to the jurisdictional deference provisions of Title VII, 42 U.S.C. § 2000e–5(c), thereby constituting a bar to plaintiff's cause of action. Somewhat less harsh is the conclusion of the majority in *Goger v. H. K. Porter Co., Inc.,* 492 F.2d 13 (3d Cir. 1974), that while § 633(b) is a jurisdictional requirement, it nonetheless will not compel dismissal of an action where a plaintiff can present an equitable claim justifying the hearing of his cause. *Curry v. Continental Airlines,* 513 F.2d 691 (9th Cir. 1975), also utilized the analogy of Title VII law to find jurisdictional import in § 633(b), but it strictly construed the words of that section to require a specific legislative mandate to the state authority concerning age-discrimination.

At the other extreme is the more recent opinion in *Vazquez v. Eastern Airlines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975), which concluded that § 633(b) did not establish resort to state law as a jurisdictional prerequisite

for a federal age discrimination action. This opinion closely relies on the concurring opinion of Judge Garth in *Goger, supra.* A similar, but not identical, conclusion was reached in *Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975). *Vazquez* and the *Goger* concurrence maintain that the language of § 633(b) applies only to those cases where the plaintiff had already sought relief under state law prior to filing the federal action. This viewpoint holds that in such a situation the plaintiff must give the state authority the required sixty days to attempt to resolve the dispute. However, there is no obligation to utilize the state remedy. *Skoglund* holds that

> "although Section 633(b) requires timely resort to state remedies before a complaint may be filed in federal court, this requirement is not jurisdictional; therefore, plaintiff's failure to notify the Massachusetts Commission Against Discrimination in a timely fashion does not bar him from this court." 403 F.Supp. at 802–03.

This holding differs from *Vazquez* in that it does not expressly treat § 633(b) as applying solely to actions in which the state remedy had previously been invoked. Instead it construes § 633(b) as an expression of congressional deference to the concept of federalism, but not as a formal jurisdictional precondition.

This survey of recent judicial opinion makes it apparent that no commonly accepted construction of § 633(b) has of yet emerged. This court has found no indication that the Seventh Circuit has expressed a view on this controversy.

As noted, the courts that view § 633(b) as a jurisdictional requirement are greatly influenced by the similarity of the language of that provision to language found in Title VII at § 2000e–5(c).[2] The latter provision has been generally perceived as a jurisdic-

---

tended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based,

the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority."

**2.** 42 U.S.C. § 2000e–5(c) provides:

"In the case of an alleged unlawful employment practice occurring in a State, or political

tional requirement. *Abshire v. Chicago and Eastern Illinois Railroad Co.*, 352 F.Supp. 601 (N.D.Ill.1972). Judge Hunter cited in *Goger, supra*, portions of the legislative history indicating that Title VII served as a model for the drafting of this portion of the Age Discrimination in Employment Act. 492 F.2d at 16 (fn. 13).

Although this is a well argued position, the court finds that a persuasive argument has also been made by Judge Pesquera in *Vazquez, supra*, and by Judge Garth in his concurrence to *Goger* for the proposition that § 633(b) does not mandate resort to state procedures as a jurisdictional prerequisite for an action under the Act.

These arguments agree that Title VII was a significant model for the Act, but note that various provisions from Title VII procedure were considered and specifically rejected by Congress in the drafting of the 1967 Age Discrimination Act. Congress evidently was concerned about the impact of bureaucratic delay imposed by the establishment of an additional administrative impediment to adjudication of grievances. The concept of age discrimination itself made it clear that the typical plaintiff under the Act would be elderly, and thus particularly afflicted by the burdens of administrative tardiness. See the statement of Senator Javits in the hearings on the Act quoted in part at 405 F.Supp. 1355.

*Vazquez* correctly notes that the jurisdictional requirements for a suit brought under the 1967 Age Discrimination Act are found in § 7 of that Act, 29 U.S.C. §§ 626(c)–(e). These provisions bear the express label of "jurisdiction" in the United States Code, and are the more likely analogue to § 2000e–5(b)–(d) of Title VII. Both Title VII and the Age Discrimination Act establish as a jurisdictional requirement the filing of notice of a proposed action prior to the commencement of the suit. But while the jurisdictional notice requirement appears in the same section of Title VII with the language dealing with deference to state law remedies, the reference to state law deference in § 633(b) is isolated from the other jurisdictional provisions and is removed to the tail end of the Act. It is found only after the section establishing an annual report from the Secretary of Labor to Congress on age discrimination matters.

While the provisions of § 626 are expressly labeled jurisdictional, § 633(b) is part of a section entitled "Federal State relationship", and is captioned "Limitation of Federal Action upon commencement of State proceedings." The language of this section, which admittedly is not artfully worded, does not expressly command the commencement of proceedings under state law. Semantically the sentence "no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law . . ." can be read to accord with an interpretation that *after the commencement* of proceedings under the state law, no suit may be brought under § 626 for sixty days. Thus a construction that "the limitation upon the right to file suit under the ADEA would be applicable *only* if proceedings had *already* been initiated under existing State law", 405 F.Supp. at 1356, makes grammatical sense and is consistent with the concerns expressed by Senator Javits.

subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one

hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority."

Judge Garth and Judge Pesquera both gave substantial deference to the construction of the statute given by Secretary of Labor Wirtz, which was summarized by Judge Garth as an assertion "that the sole Congressional purpose underlying the enactment of 29 U.S.C. § 633(b) was to give the State time to act on a complaint *if* an aggrieved individual chose to proceed there first." 492 F.2d at 17–18. This interpretation does buttress the non-jurisdictional thesis, and comports with congressional concern to provide concurrent federal and state alternatives for victims of age discrimination.

It is noteworthy that § 633(a) of the Age Discrimination Act,[3] a provision with no exact counterpart in Title VII, mandates that an action under the 1967 Act will supersede any state action. Judge Garth's comment upon the interaction of these sections is particularly cogent:

"I do not believe that it was the intent of Congress to require, prior to the institution of a Federal action, the commencement of a State proceeding which, under § 633(b), need not be concluded and which in any event would be superseded by the filing of the Federal action under § 633(a)." 492 F.2d at 18.

A construction of § 633(b) as a jurisdictional prerequisite implies a belief that Congress would choose to defer to federalism by burdening victims of age discrimination with an obligation to file what will ordinarily be nothing more than a *pro forma* gesture. Mandatory recourse to state remedies, which need not be exhausted, would normally be a dilatory exercise or a "procedural pitfall for unsuspecting individuals."

405 F.Supp. at 1357. The history of litigation over this section underscores how easily problems may arise from such a construction. Judge Pesquera and Judge Garth find it more credible to assume that Congress sought by drafting § 633(b) to affirm its commitment to a federal system by enabling a complainant to initially elect a pursuit of state remedies, and to give substance to such an election by assuring state authorities at least a minimum period in which to accomplish their objectives.

■ Thus, there is considerable controversy over whether § 633(b) constitutes a jurisdictional precondition for an action under the Age Discrimination Act. But it is not necessary for the court to resolve this dispute since the court finds substantial grounds for its conclusion that the applicable Illinois laws do not provide the remedies contemplated by the Act. Thus § 633(b) does not in any case require initial resort to Illinois statutory remedies for age discrimination.

As noted, § 633(b) has two separate requirements. There must be a state law against age discrimination, and there must also be a state authority charged with granting or seeking relief against such discrimination.

Illinois does have "an Act to prohibit unjust discrimination in employment because of age and providing for penalties." Ill.Rev.Stat. ch. 48 §§ 881–7. Section 884(1) renders unlawful the conduct complained of by the plaintiff.[4] The parties agree that this satisfies the first requirement of § 633(b).

However, there is a dispute as to whether Illinois law "authoriz[es] a State authority

---

**3.** § 633(a) provides:

"Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action."

**4.** Ill.Rev.Stat. ch. 48 § 884(1) provides:

"It is an unlawful employment practice for an employer:

(1) to refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to his terms, conditions or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction; however, subsection (1) shall not be construed to make it unlawful to reject any applicant for a particular job when the consideration of safety makes it impractical to train an applicant over 45 years of age for the duties of that particular job."

to grant or seek relief from such discriminatory practice[s]."

The defendants contend that Ill.Rev.Stat. ch. 14 § 9 satisfies the second requirement. This statute states:

"There is created in the office of the Attorney General a Division for the Enforcement of Civil and Equal Rights. The Division, under the supervision and direction of the Attorney General, shall investigate all violations of the laws relating to civil rights and the prevention of discriminations against persons by reason of race, color, creed, or physical or mental handicap, and shall, whenever such violations are established, undertake necessary enforcement measures."

The defendant notes that the Illinois statute against age discrimination refers to a "right to employment otherwise lawful without discrimination because of age", Ill. Rev.Stat. ch. 48 § 881(c) and as a consequence argues that Ill.Rev.Stat. ch. 48 § 884(1) is one of the "laws relating to civil rights" which the Division for the Enforcement of Civil and Equal Rights may enforce.

Both parties have sought to clarify the scope of the authority of the Division by means of affidavits which relate the contents of telephone conversations between their attorneys and the current director of the Division. The contents of these affidavits lead to divergent implications as to the fundamental issue facing the court. In any case, they are both clearly reconstructions of unsworn, out-of-court conversations, related by a third party. Both are inadmissible hearsay. As a result the court must look to the language of the statutes and the constructions given them by the courts.

While the legislature has called freedom from age-based discrimination a right, it is also clear that it has repeatedly failed to refer to the age discrimination act in its specific list of types of statutes that the Division is authorized to enforce. By common statutory construction a listing of specific items will take precedence over a general phrase such as "laws relating to civil rights". Similarly, the inclusion of specific categories of laws implies a conscious exclusion of those other specific categories omitted from the statute. *Inclusio unius est exclusio alterius.*

Reference to the Illinois age discrimination law buttresses the conclusion that this is not a statute which can be enforced by the Division to grant relief to a victim of discrimination. The statute provides a penalty of $50–100 against a perpetrator of illegal age discrimination and denominates a violation of the law a "petty offense". There is no express indication that the victim may obtain damages or other relief. The cases annotated in Smith-Hurd Illinois Annotated Statutes reveal only one reported case where an alleged victim sought relief under this act. In *Kennedy v. Com. Unit Sch. Dist. # 7*, 23 Ill.App.3d 382, 319 N.E.2d 243 (4th Dist. 1974), the court disposed of the claim based on the age discrimination act by finding that the statute did not cover the specific situation raised by that action. This was a private action, and was not brought by the Division. There is thus no reported case authority affirming that the Division could grant or seek *relief* under this act, and considerable reason to doubt that such relief is available. And, more pertinent to this action, there is no evidence that the Division has ever attempted to bring any enforcement action under the Illinois Act.

The court therefore finds no basis to conclude that Illinois has provided the state law remedies against age discrimination contemplated by the Federal Age Discrimination in Employment Act. The material before the court indicates that there is no statutory basis for relief, and that the Division neither has statutory authority to seek or grant relief, nor has it ever attempted to assert any such authority.

The conclusion that Illinois lacks the state remedies contemplated by § 633(b) is buttressed by the opinion of the Ninth Circuit in *Curry v. Continental Airlines*, 513 F.2d 691 (9th Cir. 1975), which held that the federal act required a "showing of state concern in the *specific area* of age discrimination", at 694 (emphasis in original). The

California law considered in *Curry* made age discrimination in unemployment unlawful and a misdemeanor violation. The California Department of Human Resources Development was given the power of investigation over violations of the Unemployment Insurance Code, which contained the age discrimination provision. The Department also possessed the power to "prosecute actions" with respect to matters within its jurisdiction. While the Ninth Circuit noted that the Department did not assign any personnel to handle age discrimination complaints and referred complainants to local and federal agencies,[5] it emphasized that there was not "any specific legislative mandate directing the Department to act in the field of age discrimination". 513 F.2d at 693. The Illinois statute establishing the Division for the Enforcement of Civil and Equal Rights, Ill.Rev.Stat. ch. 14 § 9, is cast in the same generalized language. *A fortiori* the court cannot find a specific legislative mandate to act in the field of age discrimination where the statute specifies various anti-discrimination laws which the Division is required to enforce, and where age discrimination is not to be found among the enumerated categories.

Finally, the court emphasizes that it would not dismiss the instant complaint even if it could be shown that the Illinois remedies satisfy the intent of § 633(b) and that this provision in fact establishes a jurisdictional prerequisite for an action under the Federal Age Discrimination Act.

As the heading under which it is included in the statute indicates, § 633 reflects a congressional intent to preserve federal-state comity by expressing some deference to state created remedies. The defendant emphasizes in its briefs the minimal nature of that deference, citing language from *Pacific Maritime Association v. Quinn*, 465 F.2d 108, 110–11 (9th Cir. 1972), that "[t]he federal purpose is to give respectful but modest deference to a state that has evidenced interest." The defendant concedes

that the alleged jurisdictional requirement is limited to the formality of giving the state agency sixty days to resolve the dispute. Not only would a complainant be permitted to look to the federal courts if he were not satisfied with the work of the state agency after two months, but § 633(a) would cut off the efforts of the state agency *in medias res.*

A review of the litigation spawned by § 633(b) reveals that this section has proved more successful as a trap to the unwary litigant than as a gesture of respect towards state remedies. It is also evident that the federal judiciary has proved extremely reluctant to permit such an obscure technicality, such a token tip of the hat towards federalism, to deprive complainants of the congressionally intended remedy for age-based discrimination. Of the cases cited by the parties to construe the import of § 633(b), it is significant that only in *Vaughn v. Chrysler Corporation, supra,* was the action actually dismissed. And Chief Judge Kaess agreed in *Vaughn* that the requirements of § 633(b) may be waived under the principles of equity. The majority in *Goger v. H. K. Porter Co., Inc., supra,* vacated the district court's dismissal of the action because the plaintiff had relied upon the advice of the Secretary of Labor and because the jurisdictional nature of § 633 had not been clearly indicated by the courts. As the court noted in *Skoglund v. Singer Co., supra,* many of the requirements of Title VII and the Age Discrimination Act have been treated as "jurisdictional but subject to equitable modification." *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888 (5th Cir. 1970); *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975).

The Age Discrimination Act is a remedial statute enacted by Congress to combat an unjust and injurious employment practice. Such statutes are liberally construed to achieve their ends. *Skoglund, supra,* at 804.

**5.** The hearsay affidavits excluded by the court sought to introduce evidence concerning the manpower allocated by the Division for the Enforcement of Civil and Equal Rights to age

discrimination cases, and the practices of the Division with respect to such complaints. There is no admissible evidence before the court with respect to these questions of fact.

As the *Vazquez* court noted, defendants frequently seek to utilize § 633(b) as a "procedural pitfall for unsuspecting individuals which could easily serve . . . to deprive aggrieved individuals of their day in court, thereby thwarting the objective of this remedial legislation." 405 F.Supp. at 1357 (citations omitted).

The court will not allow this to happen in the instant case. As the discussion of the law, *supra*, reveals the construction of the provisions of § 633(b) as well as the relevant state statutes is not easy, and there have been no definitive interpretations of these laws either from the Illinois courts or the Seventh Circuit. In these circumstances it would not be equitable to deprive plaintiff Bertrand of his day in court because he failed to comprehend the details of these laws better than many judges.[6]

█ The court therefore notes that, regardless of the jurisdictional significance of § 633(b), under equitable principles it would not have dismissed the instant action. Rather, it would have retained jurisdiction for a period sufficient to allow the plaintiff to defer to the available state administrative procedures for the sixty days indicated in § 633(b). The plaintiff would be allowed to return to the federal remedy after the expiration of the token sixty-day deference period. This accords with the favored practice of other courts when confronted with the failure of a plaintiff to comply with the Title VII deferral requirements. *Oubichon v. North American Rockwell Corporation*, 482 F.2d 569 (9th Cir. 1973); *Parker v. General Telephone Co. of the Northwest, Inc.*, 476 F.2d 595 (9th Cir. 1973); *Mitchell v. Mid-Continent Spring Co. of Kentucky*, 466 F.2d 24 (6th Cir. 1972); *Motorola, Inc. v. EEOC*, 460 F.2d 1245 (9th Cir. 1972). *See also, Crosslin et Vir v. Mountain States Tel. & Tel.*, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971).

The motion to dismiss the complaint is therefore denied since, even if § 633(b) were to be viewed as a jurisdictional requirement, that section does not require

any prior resort to the laws and agencies of Illinois because the Illinois remedies do not specifically grant any Illinois agency the authority to grant or seek relief from age discrimination.

## II. Jury Trial

█ The defendant has moved, in the alternative to its motion to dismiss the complaint, for an order striking Bertrand's demand for a jury trial. Again making an analogy to Title VII law, Orkin Exterminating argues that there is no right to a jury trial under the Age Discrimination Act.

In fact, the language of the Act differs substantially from the equivalent passages in Title VII and reveals an evident congressional consent to jury determinations of issues under the Act. Thus § 626(b) reads in part

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such *legal* or equitable relief as may be appropriate to effectuate the purposes of this chapter . . ." (Emphasis added.)

Similarly, § 626(c) reads in part

"Any person aggrieved may bring a civil action in any court of competent jurisdiction for such *legal* or equitable relief as will effectuate the purposes of this chapter . . ." (Emphasis added.)

In contrast, Title VII states at 42 U.S.C. § 2000e–5(g)

". . . the court may *enjoin* the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . *or any other equitable relief* as the court deems appropriate." (Emphasis added.)

The language of the statute thus expressly contemplates the availability of "legal" relief which, in contrast to "equitable" rights, are protected by the Seventh

---

**6.** The court notes that if this action were dismissed, the statute of limitations would bar the

plaintiff from reinstituting suit following recourse to the state law remedies.

Amendment guarantee of adjudication by a jury. Statutory rights may be "legal rights", *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), and in actions raising both legal and equitable claims the issues underlying a legal claim for damages must be tried to a jury. *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The Supreme Court has endorsed a three-pronged test for the determination of whether an action can be characterized as "legal" or "equitable".

> ". . . the 'legal' nature of an issue is determined by considering first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries." *Ross v. Bernhard*, 396 U.S. 531 at 538, fn. 10, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

The Court has also indicated that the strong federal policy favoring jury trials requires that all doubts should be resolved in favor of granting a trial by jury. *Ross v. Bernhard, supra; Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

The relief sought in the complaint includes the following: (1) an order reinstating the plaintiff in his former position with full seniority and status; (2) damages for lost wages; (3) damages for physical and mental suffering; (4) costs of the suit; (5) attorneys' fees; (6) other just and appropriate relief.

The parties agree that the injunctive relief sought and attorneys' fees and costs of the action remain within the province of the judge and do not entitle a plaintiff to a jury trial. However, there is considerable dispute over the classification of the demand for back wages and as to the availability of damages for physical and mental suffering under the Age Discrimination Act.

As in the case with many critical aspects of litigation under this statute, there is a dearth of precedent on these matters. However, the two cases most closely in point both concur that back pay should be treated as a "legal" claim, triable by jury.

*Chilton v. National Cash Register Co.*, 370 F.Supp. 660 (S.D.Ohio 1974), and *Cleverly v. Western Electric Co.*, 69 F.R.D. 348 (W.D. Mo.1975), are both thoughtful and detailed opinions which focus on the availability of a jury trial in private actions for back pay under the Age Discrimination Act.

Applying the *Ross v. Bernhard, supra,* test, the claim for back pay was analogized to the common law action for breach of contract by wrongful damage, or as an action sounding in tort with the statute merely creating a new legal duty on the part of the employer. *Chilton, supra,* 370 F.Supp. at 665; *Cleverly, supra,* 69 F.R.D. at 350–51. The courts then concluded that, since damages are a traditional form of relief in courts of law, and since the calculation of damages is a standard function of a jury, a private action for back pay raises a jury issue.

The defendant has not cited any case that reaches a contrary conclusion with respect to the Age Discrimination Act. Of the cases cited, the most interesting is *O'Connell v. Ford Motor Co.*, 11 F.E.P. Cases 1474, 1475 (E.D.Mich.1975), which says in dicta that "[b]asically, an award of back pay has been held to be equitable when it is statutorily part of the restitution remedy of reinstatement." However, the court did not decide this issue because it found that the plaintiff had indicated in his complaint that he only sought equitable remedies. Furthermore, the analogy to Title VII upon which Judge Pratt relied is of doubtful validity in light of the different language of the statutes. *Accord, Cleverly, supra,* 69 F.R.D. at 351. For the same reason, the host of Title VII cases cited by Orkin Exterminating are not in point.

The defendant argues that because Bertrand has also demanded reinstatement, his claim for back wages should not be viewed as a legal action for monetary damages but should be treated as part of the equitable remedy of restitution. However, *Cleverly* was brought by a plaintiff seeking reinstatement as well as back pay. Nor is the very brief order of Judge Lynch in *Brennan v. International Harvester*, 7 E.P.D. ¶ 9171

**1132**

(N.D.Ill.1974), persuasive that *Cleverly* is wrongly decided on this point. While the latter case holds that the inclusion of a prayer for back wages does not transform an equitable proceeding into a case legal in nature, *International Harvester* was tried pursuant to the powers, remedies, and procedures provided in § 17 of the Fair Labor Standards Act, which establishes an equitable proceeding. However, the instant action seeks enforcement pursuant to § 16 of FLSA, as is permitted under 29 U.S.C. § 626(b).[7] Actions under the latter section afford the right to a jury trial. *Chilton, supra,* 370 F.Supp. at 664.

Thus, in accordance with the thoughtful opinions in *Chilton* and *Cleverly,* the court holds that the complaint has raised claims which may be tried by a jury, and the motion to strike the jury demand must therefore be denied.

### III. Damages for Physical and Mental Suffering

■ Defendant has also moved to strike those portions of the complaint which demand damages for physical and mental suffering, alleging that such relief is not authorized under the Act.

Orkin Exterminating does not cite any cases expressly barring such claims, and again relies on purportedly analogous Title VII actions. It also cites several cases under the Age Discrimination Act in which the plaintiff was awarded only back wages. However, none of these cases discussed the availability of this type of damages, and it is apparent that the plaintiffs did not recover for physical and mental suffering because they did not seek such relief.

In contrast, the plaintiff cites *Rogers v. Exxon Research and Engineering Co.,* 404 F.Supp. 324 (D.N.J.1975), which contains a long discussion of this very issue. *Rogers* concludes that a plaintiff under the Age Discrimination Act is entitled to demonstrate damages for pain and suffering.

Noting that the statute sought to "make whole" victims of discrimination, the court stressed that

"the most pernicious effect of age discrimination is not to the pocketbook, but to the victim's self-respect. . . . [T]he out-of-pocket loss occasioned by such discrimination is often negligible in comparison to the physiological and psychological damage caused by the employer's unlawful conduct." 404 F.Supp. at 329.

The court noted that a discharged elderly worker is often able to find alternative employment because of his experience and skills, and thus mitigate his pecuniary injury. The real injury suffered by a discriminatee may thus be poorly compensated by an award of mere back wages.

The *Rogers* court distinguished those Title VII cases, also cited by defendant Orkin Exterminating, on the grounds that these Title VII cases were decided on the basis that relief under that statute is limited to "equitable relief in the form of restitution." As Judge Stern noted in *Rogers,* the language of the Age Discrimination Act is much more expansive, providing "such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 626(c). Similarly, § 626(b) allows the court "jurisdiction to grant such *legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation* judgments compelling employment, reinstatement, or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." (Emphasis added.) It is apparent that Congress, recognizing the subtle forms that age discrimination may take, afforded plaintiffs a wide arsenal of remedies for the diverse injuries that may result from such discrimination.

*Rogers* is the only case in point on this issue, and the court finds it persuasive. Ac-

7. § 626(b) provides in part:
"The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section."

cordingly, the motion to strike those portions of the complaint seeking damages for physical and mental suffering is hereby denied.[8]

### IV. Motion for a More Definite Statement

The final aspect of defendant Orkin Exterminating's motion is a contention that paragraphs 5, 11 and 12 are insufficiently precise. The defendant asks that the complaint be dismissed or that the plaintiff be required to provide a more definite statement.

Paragraph 5 asserts that the defendant is an employer within the meaning of § 630(b) of the Act. Paragraph 11 asserts that the plaintiff suffered great humiliation and embarrassment and was curtailed in his duties and ultimately constructively discharged by the defendant. Paragraph 12 asserts that Orkin Exterminating's conduct was wilful.

The court fails to perceive how these allegations do not satisfy the requirements of F.R.Civ.P. 12(e) of a pleading sufficiently clear to permit an opponent to frame a responsive pleading.

Certainly, if Orkin Exterminating is not an employer within the contemplation of the Act, the defendant has no need of facts pleaded by the plaintiff to obtain the information regarding its own business necessary to raise a jurisdictional defense. *Shultz v. Manor House of Madison, Inc.*, 51 F.R.D. 16 (W.D.Wisc.1970).

The basis for the allegations of paragraphs 11 and 12 may be understood by a perusal of the entirety of the complaint. To the extent that Orkin Exterminating is surprised by these allegations, it has the right to aver that it is without knowledge or information sufficient to form a belief as to the truth of the allegation. *EEOC v. Wah Chang Albany Corp.*, 499 F.2d 187, 190 (9th Cir. 1974). In any case, it is manifestly improper to burden a plaintiff with an obligation to amend a complaint as a means of obtaining discovery. *Hodgson v. Orson E.*

*Coe Pontiac, Inc.*, 55 F.R.D. 133, 134 (W.D. Mich.1971); *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126 (5th Cir. 1959).

The defendant's motion for a more definite statement is therefore denied.

---

8. Since the question of damages for physical and mental suffering raises a legal issue which is triable by a jury, the conclusion that the Act permits such relief provides an alternate basis for the court's denial of defendant's motion to strike Bertrand's jury demand.