**Duane BERTRAND, Plaintiff,**

v.

**ORKIN EXTERMINATING COMPANY, Defendant.**

**No. 76 C 1337.**

United States District Court,
N. D. Illinois, E. D.

May 25, 1977.

William J. Cooney, John C. Ruppert, and Robert C. Schnitz, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for plaintiff.

Fred R. Kimmel, Arvey, Hodes, Costello & Burman, Chicago, Ill., John Bacheller, Jr., Fisher & Phillips, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

The instant case has compelled the court to consider various difficult questions of construction under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. In a previous opinion, entered August 26, 1976, (419 F.Supp. 1123), this court held that damages for physical and mental suffering were available under the ADEA. Since then, the analysis on this point found in *Rogers v. Exxon Research and Engineering Co.*, 404 F.Supp. 324 (D.N. J.1975), upon which this court largely relied, has been rejected by a panel of the Third Circuit Court of Appeals, 550 F.2d 834 (3d Cir., 1977). As a consequence of this decision, the court requested the parties to rebrief the issue of compensatory damages under the ADEA.

Although various analogies to other civil rights statutes have been suggested as an aid to interpreting the statute, the court's consideration must focus on the particular statutory language in question. The ADEA reads in 29 U.S.C. § 626(b) that

> "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation

judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." (Emphasis added.)

The underlined language is reiterated in § 626(c), which grants persons aggrieved under the statute the right to bring a civil action under the statute. The sweeping nature of this language appears to justify this court's finding that Congress "afforded plaintiffs a wide arsenal of remedies for the diverse injuries that may result from [age-based] discrimination." 419 F.Supp. at 1132.

The Third Circuit panel, however, was concerned that the statute specifically mentioned items that would qualify as money damages only in referring to "amounts", i.e., back pay and "liquidated damages", a doubling of lost earnings applied in cases of willful discrimination. It held that "legal damages" under the ADEA were limited to these items.

■ Despite this reasoning, the only express limit on the scope of the available legal relief under the statute is that created by the "purposes" of the statute. So long as the relief effectuates the statutory purpose, the court may grant such "legal relief as may be appropriate". Indeed, the breadth of the available remedies is underscored by the words "without limitation" in the subsequent listing of possible means of relief.[1]

1. The recent decision in *Looney v. Commercial Union Assurance Cos.*, 428 F.Supp. 533 (E.D. Mich.1977), argues that the principle of *ejusdem generis* compels a statutory construction providing for legal damages limited to "liquidated damages". It argues that the word "legal" in the penultimate sentence of § 626(b) refers solely to the preceding reference to liquidated damages. The list of remedies in that same sentence is characterized as purely equitable. The court concluded that the statute allows only the expressly mentioned forms of legal damages, since under *ejusdem generis* the list of purely equitable remedies limits the term "without limitation" to equitable remedies.

This reading is extremely strained. In allowing for "appropriate" relief "without limitation", the statute refers in the same sentence to both legal and equitable remedies. Both are referred to in the abstract, and the subsequent listing of remedies must be seen as examples in light of the words "without limitation".

The principle of *ejusdem generis* should not be applied here; it is used solely where the wording leaves some uncertainty as to the purpose of the legislation. *Gooch v. U. S.*, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936). If Congress had intended to refer to equitable relief in the abstract (accompanied by a list of purely equitable examples) and only to a specific type of legal relief, it is logical to expect that Congress would have identified expressly that relief, rather than utilizing the general term. It is also noteworthy that 29 U.S.C. § 626(c) repeats the language that an ADEA suit is for legal or equitable relief to effectuate the statutory purposes without any reference to "liqui-

The district court in *Exxon* set out in the footnotes an extensive series of quotes from the legislative history of the ADEA. These reveal that various congressional leaders were concerned with the physio- and psychological effects of age discrimination on senior workers. These citations are very persuasive of the fact that Congress did not merely concern itself with the direct pecuniary impact of age discrimination. Similarly, § 621, the statutory statement of purpose, contains no language that would exclude consideration of the physical and mental impact of such conduct. Indeed, § 621(a)(3) specifically refers to the congressional concern about the deterioration of "morale" resulting from the long-term unemployment of older workers.[2]

The Third Circuit acknowledged the congressional concern for the "anxiety" of discharged elderly workers, but assumed that Congress concluded that "the resumption of productive work removes the root of the emotional anxiety."

It may be true that a return to work will go a long way towards halting the anxieties resulting from age-discrimination. But reinstatement or promotion serves primarily to put a temporal end to the illegal conduct, while an award of back pay acts to make the victim financially whole. Neither remedy compensates the *previously undergone*

mental trauma and somatic effects of a prohibited discharge. Yet it is apparent that these matters are equally within the concern of Congress and covered by the statutory purpose. Whatever the prospective psychological effect of the remedies sanctioned by the Third Circuit panel, they will not work *ex post facto* to eradicate the prior mental and physical injury.

The real objection of the Third Circuit on this point appears to be the fear that compensatory damages will be abused by plaintiffs and misunderstood by a jury. The court was concerned that these damages would not be limited to compensation for actual injuries. The Third Circuit clearly suspected that pain and suffering awards would be primarily punitive in nature, measuring the "aggravated nature of the acts" rather than "the actual distress fairly attributable to the plaintiff's treatment by the company." The court directly referred to "the jury's excessive award of $750,000."

However, the possibility that a jury may misapply the law should not justify the abandonment of one of the objectives of the statute, nor the surrender of a legal weapon provided by Congress. A properly instructed jury will be cautioned as to the distinction between compensatory and punitive damages.[3] And the trial court always retains the power to reject a verdict without support in the evidence.[4]

---

dated damages" or any list of examples to which *ejusdem generis* could appertain.

Finally, the critical contention that the list of remedies in § 626(b) is purely equitable is itself subject to serious challenge. The Michigan district court in *Looney* asserted that back pay awards are equitable restitution. This court has previously concluded that a claim for back wages under ADEA is in fact a legal action, 419 F.Supp. at 1130–32, an interpretation incidently shared by the Third Circuit panel in *Rogers v. Exxon, supra.*

**2.** There is thus no apparent basis, either in the actual language of the statute or the legislative history for the conclusion of the court in *Sant v. Mack Trucks, Inc.,* 424 F.Supp. 621 (N.D.Cal. 1976) that

"[t]he act draws its parameters of protected interests around the pecuniary employment relationship between the employer and employee. Personal interests, such as bodily and mental integrity, are well outside the boundaries of the Act."

**3.** This argument also applies to the Third Circuit panel's concern that Congress intended to "restrict the penalty provisions of the Act to doubling the amount of lost earnings [i.e. liquidated damages]". The statutory scheme is not upset so long as compensatory damages are restricted to their proper function. By contrast, the elimination of such damages would leave an area of unremediable injury for victims of age-based discrimination, upsetting the overall scheme.

**4.** In *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841 (W.D.Okl.1976), the court held that compensatory damages for pain and suffering were available under the Act, but reserved the determination of damages to the bench. The court rejected the damage demand for $25,000. and entered an award for $500., which cannot be in any way characterized as punitive.

The Third Circuit panel also expressed concern that the allowance of compensatory damages would undercut the role of conciliation processes in the statutory scheme.[5] It argues that under the ADEA "private lawsuits are secondary to administrative remedies and suits brought by the Secretary of Labor." The core of its concern appears to be the fear that claimants would be less willing to accept out-of-court settlements where they could hope for a large verdict for pain and suffering. Similarly, the court fears that the Secretary and the claimant would be unable to agree as to an acceptable settlement in cases where enforcement action was sought by the government.[6]

Essentially this position again reflects the expectation that pain and suffering claims will be abused.[7] To the extent that plaintiffs will have unfounded and unrealistic expectations, or that they will seek to apply the risk of an excessive verdict as a bargaining tool for a more favorable settlement, the unease of the Third Circuit is not without some justification. Nonetheless, such litigational tactics are endemic to suits where the full injuries of a plaintiff cannot be calculated with precision. Still the dangers of ineffective conciliation efforts must be balanced against the injustice of leaving without remedy a class of injuries recognized by Congress in drafting the ADEA.

Moreover, the statutory pattern cannot be truly said to reject private civil actions in favor of conciliation efforts. The statement of congressional purposes in § 621(b) asserts that the ADEA seeks "to help employers and workers find ways of meeting problems arising from the impact of age on employment." Accordingly, upon receipt of a notice to sue, the Secretary of Labor is mandated by § 626(d) to

"promptly notify all persons named therein as prospective defendants in the action and [to] promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

Nonetheless, there is no bar to a private suit[8] after the expiration of sixty days from the presentation of the notice of intent to sue.[9] In practice, the ADEA defers to the administrative process to a lesser extent than other anti-discrimination statutes such as Title VII.

It is apparent that the Age Discrimination in Employment Act has generated a variety of disputes among the courts over its proper construction.[10] On several critical issues there is no clear interpretative concensus. Judicial analysis is still being applied at the trial and appellate levels to clarify this statute. With respect to the issue of compensatory damages for physical pain and mental suffering, this court was persuaded by the analysis of Judge Stern in the district court opinion in *Rogers v. Exxon.* The same opinion also convinced the court in *Murphy v. American Motors Sales*

---

**5.** This fear was also expressed by the court in *Sant v. Mack Trucks, Inc.,* 424 F.Supp. 621 (N.D.Cal.1976).

**6.** However, the Third Circuit's concern that there are no administrative guidelines for pain and suffering damages seems unnecessary since the ADEA provides only for conciliation efforts, rather than any administratively determined awards.

**7.** Plaintiff's demand for $1,000,000. in damages in the instant case does little to assuage the concern that compensatory damage claims may be abused.

**8.** Where the Secretary of Labor brings an enforcement action under the ADEA, it appears that a suit may be dismissed for failure to attempt meaningful conciliation. *Dunlop v.*

*Resource Sciences Corp.,* 410 F.Supp. 836 (N.D.Okl.1976).

**9.** § 626(c) states that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction [for relief. pursuant to the ADEA]." The statute prescribes time limits within which an aggrieved individual must file a notice of intent to file suit, and states at § 626(d) that "[n]o civil action may be commenced by any individual under this section until the individual has given the Secretary not less then sixty days' notice of an intent to file such an action."

**10.** For example, there appears to be a split among the courts of appeals which have ruled on the question as to the availability of a jury trial under the ADEA.

Corp., 410 F.Supp. 1403 (N.D.Ga.1976), as well as the court in *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841 (W.D.Okl.1976), which also cited the previous opinion published in the instant case. The district court opinion was also discussed with approval in Note, *Age Discrimination-Compensatory Damages for Pain and Suffering Held Recoverable Under the Age Discrimination in Employment Act of 1967,* 7 Seton Hall L.Rev. 642 (1976). In disagreeing with Judge Stern's analysis the Third Circuit panel nonetheless acknowledged "the thoughtful approach utilized by the district court and the policy reasons which could be cited to support its position."

Neither the Third Circuit opinion on this subject nor the district court opinions [11] which concur with that opinion are binding on this court. Although the district court opinion has been reversed, it does not invalidate the other decisions which have relied on its persuasiveness. In the absence of an authoritative ruling on this dispute by the Supreme Court or the Seventh Circuit, this court is free to apply whatever analysis is most convincing.

This court previously cited the argument of Judge Stern that "the most pernicious effect of age discrimination is not to the pocketbook, but to the victim's self-respect . . .", 404 F.Supp. at 329. The legislative history of the ADEA reveals that various leaders in both houses were cognizant of this point, and sought to provide a remedy that would truly make whole the victim of age discrimination. Neither the defendants nor any of the courts taking a contrary position have ever cited any language in the statute or in the legislative history which expresses an intention to leave these injuries without redress. The court remains convinced that "the real injury suffered by a discriminatee may thus be poorly compensated by an award of mere back wages." 419 F.Supp. at 1132.

 The statutory language on the matter of relief must be characterized as exceptionally expansive. The court is empowered to grant "legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . without limitation". The words should be taken to mean what they say. In neither place where such language appears in § 626 is there any phrase which implies that the "legal relief" under the Act is in fact constricted.[12]

Accordingly, the court reaffirms its opinion that damages to compensate actual pain and suffering are recoverable under the Age Discrimination in Employment Act.

---

11. *Looney v. Commercial Union Assurance Cos.,* 428 F.Supp. 533 (E.D.Mich.1977), and *Sant v. Mack Trucks, Inc.,* 424 F.Supp. 621 (N.D.Cal.1976). The brief discussion in *Hannon v. Continental National Bank,* 427 F.Supp. 215 (D.Colo.1977), follows the logic of the Third Circuit opinion in *Rogers v. Exxon.*

12. The Third Circuit panel argues that "legal damage" need not necessarily include compensation for psychic or emotional distress, noting that not all jurisdictions accept this measure of damages in tort and contract actions. Despite this the court remains convinced that Congress would not have twice selected the general term "legal damages" if its intent was restricted to back pay and liquidated damages.