James Hunter, III, Circuit Judge, filed a separate opinion.

**James R. HOLLIDAY, Appellant,**

v.

**KETCHUM, MacLEOD & GROVE, INC., a corporation, Edward T. Parrack, William H. Genge, Charles E. McHugh and James E. Fuller.**

No. 77–1867.

United States Court of Appeals, Third Circuit.

Argued Feb. 24, 1978.

Reargued In Banc May 11, 1978.

Decided July 14, 1978.

As Amended Aug. 7, 1978.

Stanley M. Stein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pa., for appellant.

Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Dennis D. Clark, Paul D. Brenner, Attys., U. S. Dept. of Labor, Washington, D. C., for the Secretary of Labor as amicus curiae.

Donald T. O'Connor, John R. Johnson, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for appellees.

Argued Feb. 24, 1978.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and BECHTLE,* District Judge.

Reargued May 11, 1978 In Banc.

Before SEITZ, Chief Judge, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The question before us today is the very same question which a panel of this court answered in 1974: must a private plaintiff who charges employment discrimination in violation of the federal Age Discrimination in Employment Act of 1967 (ADEA)[1] be required to utilize state remedies before filing a suit in federal court? In 1974, a majority opinion of a panel of this court answered that question in the affirmative,

holding that initial resort to state remedies was required. *Goger v. H. K. Porter Co., Inc.,* 492 F.2d 13 (3d Cir. 1974).[2] Today, having reconsidered this issue, we have arrived at a different answer. Thus we overrule *Goger*[3] and hold that resort to state age discrimination remedies is not a precondition to maintaining a federal suit for age discrimination.

### I

On April 15, 1957, James R. Holliday entered into employment with Ketchum, MacLeod & Grove, Inc. (Ketchum), an advertising agency. Holliday served in the position of production manager at Ketchum for some nineteen years, until January 30, 1976. On that date, Holliday, aged 57, was terminated. Ketchum contends that Holliday was "involuntarily retired" "pursuant to the early retirement provisions of Ketchum's pension plan."[4] Holliday claims that Ketchum illegally discriminated against him because of his age, and that as a result he has suffered injury.[5]

Holliday initially sought redress by filing a notice under the ADEA with the Secretary of Labor (Secretary).[6] Holliday filed

---

* Honorable Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Pub.L.No.90–202, 81 Stat. 602 (1967) (codified *as amended* at 29 U.S.C. §§ 621 *et seq.*).

2. The majority opinion in *Goger,* although holding that initial state resort was essential, nevertheless permitted Goger's federal action to proceed on the basis of equitable considerations. The *Goger* concurrence, while disagreeing with the majority opinion's statutory analysis, reached the same result, and concluded as we do today that the ADEA permits, but does not require, initial resort to state remedies. 492 F.2d at 17–18.

3. The Internal Operating Procedures of this circuit provide that an in banc court is permitted to overrule a previous panel decision of this court. IOP § M.2 (1974).

4. Appellee's Brief at 4–5. *See United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 449, 54 L.Ed.2d 402, 407 (U.S.1977) ("we find nothing to indicate Congress intended wholesale invalidation of retirement plans instituted in good faith before [the ADEA's] passage"), *superseded by* Pub.L.No.95–256,

§ 2(a), 92 Stat. 189 (1978) (codified at 29 U.S.C.A. § 623(f)(2) (Supp. 1 June 1978)) ("no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual . . . because of the age of such individual").

5. Complaint ¶¶ 12–17. *See* 29 U.S.C.A. § 623(f)(2) (Supp. 1 June 1978), *quoted* n. 4 *supra*; H.R.Conf.Rep.No.950, 95th Cong., 2d Sess. 8, *reprinted in* [1978] U.S.Code Cong. & Admin.News pp. 512, 513 (retirement plans in effect before the enactment of the ADEA are *not* exempt from § 623(f)(2)).

6. 29 U.S.C. § 626(d) (prior to 1978 amendment) provided in relevant part:

   No civil action may be commenced by any individual . . . until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
   (1) within one hundred and eighty days after the alleged unlawful practice occurred . . . .

   Section 626(d), *as amended,* Pub.L.No.95–256, § 4(b)(1), 92 Stat. 190, 191 (1978) (reproduced at 46 U.S.L.W. 51 (May 9, 1978)) requires that

his notice on July 15, 1976—one hundred sixty-eight (168) days following his discharge—thereby complying with the ADEA's one hundred eighty (180) day limitations period for notifying the Secretary of age discrimination complaints.[7] Holliday however did not file an age discrimination claim with the Pennsylvania Human Relations Commission (Commission)[8] until August 5, 1976—one hundred eighty-nine (189) days following his discharge. The Commission dismissed Holliday's complaint as untimely, because discrimination complaints must be filed with the Commission "within ninety days after the alleged act of discrimination."[9]

In light of the Commission's dismissal of Holliday's claim, the district court granted Ketchum's motion to dismiss Holliday's federal complaint. The district court reasoned that under *Goger* and its progeny, "by failing to timely file with the [Commission] the Plaintiff has not afforded the state agency a reasonable opportunity to resolve the matter . . . and his [federal] suit is jurisdictionally defective."[10]

Holliday appealed.

## II

Section 623(a) of Title 29, United States Code, provides that:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age;* . . . (Emphasis added).[11]

A complainant seeking to invoke the protective provisions of the ADEA must, as noted, comply with certain time limits for filing a notice with the Secretary.[12] In addition, the relevant portion of section 14(b) of the ADEA, 29 U.S.C. § 633(b), provides as follows:

### Federal-State relationship

.    .    .    .    .

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title [*quoted in part in* n. 6 *supra*] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . .  ..

---

a litigant file a "charge" rather than a "notice of intent" with the Secretary.

**7.** *See* n. 6 *supra.*

**8.** The Pennsylvania Human Relations Act, Pa. Stat.Ann. tit. 43, §§ 951 *et seq.* (Purdon 1964 & Supp. 1978), prohibits among other things age discrimination in employment against those between the ages of forty and sixty-two. *Id.* §§ 952, 953, 954(h), 955. The statute establishes the Pennsylvania Human Relations Commission as the agency which has the power *inter alia* "[t]o adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of this act," *id.* § 957(d); "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices," *id.* § 957(f); "[t]o hold hearings, subpoena witnesses," *id.* § 957(g); and "[t]o prepare and distribute fair practices notices," *id.* § 957(*l*).

**9.** *Id.* § 959, ¶ 7 (Purdon Supp. 1977).

In view of our disposition, we need not reach Holliday's contention that he satisfied the ADEA's state resort requirement by filing a state age discrimination claim 189 days following the challenged act. *Cf. Bonham v. Dresser Indus., Inc.,* 569 F.2d 187 (3d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3695 (U.S. May 1, 1978) (No. 77–1562) (untimely state filing will not preclude federal suit if state age discrimination claim filed within 180 days).

**10.** *Holliday v. Ketchum, MacLeod & Grove, Inc.,* Civ. Action No. 77–140, Memorandum Op. at 2 (W.D.Pa. May 6, 1977); *Id.,* Order dated May 6, 1977.

**11.** Discussions of age discrimination and of the ADEA are furnished in Note, *The Age Discrimination in Employment Act of 1967,* 90 Harv.L. Rev. 380 (1976); Note, *Age Discrimination in Employment,* 50 N.Y.U.L.Rev. 924, 945–51 (1975). The 1978 amendments to the ADEA are highlighted in Explanatory Notes, 46 U.S. L.W. 53–57 (May 9, 1978).

**12.** *See* n. 6 *supra.*

As we stated at the outset of this opinion, the issue decided four years ago in *Goger,* and reconsidered today, is whether section 633(b) requires, or merely permits, a plaintiff to resort to available state age discrimination remedies before instituting federal suit. The resolution of that issue depends upon the interpretation of two statutory provisions: section 626(d), *quoted in part in* n. 6 *supra,* and section 633, *quoted in part in* text above.

When *Goger* was decided, the majority of the *Goger* panel, relying primarily on the near-identity of language of section 633(b) and a comparable provision found in Title VII of the Civil Rights Act of 1964 [13] reasoned that:

> The minor differences between section 633 and its counterpart under the 1964 Act [Title VII] are insignificant and provide no support for an interpretation of the former which is contrary to the Supreme Court's construction in *Love v. Pullman,* [404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (requiring resort to state remedies)]. . . . We therefore conclude that section 633(b) *required* appellant to seek relief from the appropriate [state] agency prior to instituting her suit in the federal district court.

492 F.2d at 16 (emphasis added).[14]

Relying on a different statutory analysis, the concurrence concluded that section 633(b) afforded litigants an initial choice of forum. 492 F.2d at 17–18.

The proper interpretation of Section 633(b), requiring as it does the harmonization of admittedly mixed statutory signals, has understandably given rise to a multitude of cases [15] and, inevitably, to differences in result. Those courts which followed our *Goger* decision have in large part adopted the majority's analysis and, by analogizing section 633(b) to the purportedly comparable provision in Title VII (42 U.S.C. § 2000e–5(c)), have required resort to state age discrimination remedies before federal suit may be instituted.[16] Other courts [17] and jurists,[18] the administrative agency charged with enforcement of the

---

**13.** 42 U.S.C. § 2000e–5(c), *amending* 42 U.S.C. § 2000e–5(b), reads as follows:

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . ..

The Supreme Court has construed this provision in Title VII to require a prior resort to state remedies. *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

**14.** *Accord, Bonham v. Dresser Indus., Inc.,* 569 F.2d 187 (3d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3695 (U.S. May 1, 1978) (No. 77–1562); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

**15.** There have been at least forty-three reported judicial decisions which interpret the language of section 633(b). Explanatory Notes to the 1978 Amendments, 46 U.S.L.W. at 56.

**16.** *E. g., Evans v. Oscar Mayer & Co.,* No. 77–1692 (8th Cir. Apr. 5, 1978), withdrawn, (8th Cir. 1978) (panel); *Reich v. Dow Badiche Co.,* 575 F.2d 363 (2d Cir. 1978); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975); *cf. Hadfield v. Mitre Corp.,* 562 F.2d 84 (1st Cir. 1977) (assuming the applicability of the state resort requirement but refusing to confront the issue directly).

**17.** *E. g., Evans v. Oscar Mayer & Co.,* 580 F.2d 298 (8th Cir. 1978) (panel), *withdrawing id.* (8th Cir. Apr. 5, 1978); *Gabriele v. Chrysler Corp.,* 573 F.2d 949 (6th Cir. 1978); *Simpson v. Whirlpool Corp.,* 573 F.2d 957 (6th Cir. 1978) (mem.) (following *Gabriele*); *Vazquez v. Eastern Air Lines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975); *cf. Bertrand v. Orkin Exterminating Co., Inc.,* 419 F.Supp. 1123 (N.D.Ill.1976), *reaffirmed,* 432 F.Supp. 952 (N.D.Ill.1977).

**18.** *Reich v. Dow Badiche Co.,* 575 F.2d 363 at 377 (2d Cir. 1978) (Feinberg, J., dissenting); *Evans v. Oscar Mayer & Co.,* No. 77–1692, slip op. at 7 (8th Cir. Apr. 5, 1978) (Henley, J., dissenting).

ADEA,[19] a joint congressional committee,[20] and certain commentators[21] have cited the *Goger* concurrence and have agreed with the analysis in that opinion that section 633(b) of the ADEA affords the plaintiff an initial choice of forum.

Recognizing the conflict that existed among the various statutory interpretations[22] and faced with increased instances of claimants who had not resorted to state remedies, or had done so in an untimely fashion, and further aware of the policy considerations which inclined toward the complainant's choice of forum,[23] we deemed it appropriate to once more examine the issue decided in *Goger,* and insofar as this circuit is concerned, to resolve it definitely by *in banc* decision. In arriving at our determination to reexamine, and ultimately to overrule, *Goger,* we were aided by the Supreme Court's discussion in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d

40 (1978), and by the recent statutory amendments to the ADEA which, although not controlling, buttress our conclusion that resort need not be had to state administrative machinery prior to filing a federal action.

While the narrow holding of *Lorillard* (that claimants under the ADEA are entitled to a jury trial)[24] is not relevant to our present determination, we find highly relevant the discussion in *Lorillard* which concerns the proper interpretation of the entire ADEA. There a unanimous Court[25] ruled that "but for" specific exceptions contained in the ADEA, Congress "intended to incorporate fully [into the ADEA] the remedies and procedures of the [Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*]". 98 S.Ct. at 871. The Court explicitly *rejected* the relevance of Title VII procedures to lawsuits which allege age discrimination. In this connection, albeit in the

**19.** In this case, as in many others, the Secretary of Labor filed an *amicus curiae* brief. The Secretary has consistently argued that the ADEA affords the claimant a choice of forum.

**20.** *See* pp. 1228–1229 *infra.*

**21.** *E. g.,* Note, *Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act,* 44 U.Chi.L.Rev. 457, 475–80 (1977) (hereinafter Note, *Procedural Prerequisites*). *See also* Note, *The Age Discrimination in Employment Act of 1967,* 90 Harv.L.Rev. 380, 411 (1976) ("While the language of the ADEA may be identical to that of Title VII in most respects, the problems of age, race and sex discrimination are not. As a result, in resolving these questions under the ADEA, courts could do well to avoid automatic application of Title VII precedents and to look instead more carefully to the distinctive aspects of age discrimination.").

**22.** In *Bertrand v. Orkin Exterminating Co., Inc.,* 419 F.Supp. 1123 (N.D.Ill.1976), *reaffirmed,* 432 F.Supp. 952 (N.D.Ill.1977). Judge Decker summarized some of the conflicting views concerning the proper construction of § 633(b).

At one extreme may be found a case such as *Vaughn v. Chrysler Corporation,* 382 F.Supp. 143 (E.D.Mich.1974), which analogizes § 633(b) to the jurisdictional deference provisions of Title VII, 42 U.S.C. § 2000e–5(c), thereby constituting a bar to plaintiff's cause of action. Somewhat less harsh is the conclusion of the majority in *Goger v. H. K. Porter Co., Inc.,* 492 F.2d 13 (3d Cir. 1974), that while § 633(b) is a jurisdictional require-

ment, it nonetheless will not compel dismissal of an action where a plaintiff can present an equitable claim justifying the hearing of his cause. *Curry v. Continental Airlines,* 513 F.2d 691 (9th Cir. 1975), also utilized the analogy of Title VII law to find jurisdictional import in § 633(b), but it strictly construed the words of that section to require a specific legislative mandate to the state authority concerning age-discrimination.

At the other extreme is the more recent opinion in *Vazquez v. Eastern Airlines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975), which concluded that § 633(b) did not establish resort to state law as a jurisdictional prerequisite for a federal age discrimination action. This opinion closely relies on the concurring opinion of Judge Garth in *Goger, supra.* . . . *Id.* at 1125.

**23.** *See* p. 1230 *infra.*

**24.** *Accord, Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 838–40 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Congress recently codified the Supreme Court's holding in *Lorillard* that a jury trial is required under the ADEA, *see* Pub.L.No.95–256, § 4(a), 92 Stat. 190 (1978) (codified at 29 U.S.C.A. § 626(c)(2) (Supp. 1 June, 1978)) (reproduced at 46 U.S.L.W. 51 (May 9, 1978)), thereby signifying congressional approval of that decision.

**25.** Justice Blackmun did not participate in the decision.

context of entitlement to a jury trial, the Supreme Court stated:

> [T]he rights created by the ADEA are to be "enforced in accordance with the powers, remedies and procedures" of specified sections of the FLSA. 29 U.S.C. § 626(b).

.    .    .    .    .

Petitioner strives to find a contrary congressional intent by comparing the ADEA with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which petitioner maintains does not provide for jury trials. We, of course, intimate no view as to whether a jury trial is available under Title VII as a matter of either statutory or constitutional right. [Citation.] However, after examining the provisions of Title VII, we find petitioner's argument by analogy to Title VII unavailing. There are important similarities between the two statutes, to be sure, both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII. But in deciding whether a statutory right to jury trial exists, *it is the remedial and procedural provisions of the two laws that are crucial and there we find significant differences.*

.    .    .    .    .

*[R]ather than adopting the procedures of Title VII for ADEA actions, Congress rejected that course in favor of incorpo-rating the FLSA procedures* even while adopting Title VII's substantive prohibitions. Thus, *even if petitioner is correct that Congress did not intend there to be jury trials under Title VII, that fact sheds no light on congressional intent under the ADEA. Petitioner's reliance on Title VII, therefore, is misplaced.*

434 U.S. at 580, 98 S.Ct. at 871–72 (footnotes omitted) (emphasis added).

As we have previously noted, the majority opinion in *Goger* reached its conclusion through an almost exclusive reliance on an analogy between procedures prescribed under Title VII and those applicable under the ADEA. We now know however that such reliance was unwarranted. Rather, procedures are to be imported from the FLSA, a statute which does not require any, let alone prior, resort to state proceedings in order to redress FLSA violations, 29 U.S.C. §§ 216, 217. The critical premise supporting the majority opinion's reasoning in *Goger* having been undercut by the Supreme Court's interpretation of the ADEA,[26] the *Goger* conclusion that prior state resort is necessary must also fall.[27]

In sum, *Lorillard* compels us to disavow the *Goger* majority's reliance on an analogy to Title VII procedure—a reliance which it now appears was "misplaced." 434 U.S. at 583, 98 S.Ct. 866. We therefore start our inquiry afresh, by examining the language and history of the ADEA in light of comparable provisions found in the FLSA.[28]

---

**26.** *Accord, Reich v. Dow Badiche Co.,* 575 F.2d 363 at 369 (2d Cir. 1978) (concurring opinion), where Judge Danaher stated:

> We fairly may disregard Title VII cases respecting the point here at issue under ADEA [whether §§ 626(a) and 633(b) require state resort] in view of the Court's opinion in *Lorillard v. Pons,* 434 U.S. 575, 583, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), where the Court perceived that Congress specifically had refused to adopt the procedures of Title VII for ADEA actions. Definitely, the Court made clear, the Congress in ADEA private actions had incorporated fully the remedies and the procedures of the Federal Labor Standards Act.

*Cf. Carter v. Marshall,* 46 U.S.L.W. 2595 (D.D.C. Apr. 20, 1978) (relying in part on reasoning contained in *Lorillard,* district court held

that federal employees have right to jury trial under Equal Pay Act).

**27.** *But cf. Reich v. Dow Badiche Co.,* 575 F.2d at 371 (2d Cir., 1978) (Danaher, J., concurring) (concluding that ADEA requires prior state resort but disavowing analogy to Title VII procedures).

While the *Goger* holding could possibly be sustained on some ground other than a Title VII—ADEA comparison and analysis, we have found no such ground to be persuasive. *See Reich v. Dow Badiche Co.,* 575 F.2d at 374 (Feinberg, J., dissenting); pp. 1229–1230 *infra.*

**28.** As Justice Powell so recently stated, a court must decide " 'not to reject [wisdom] merely because it comes too late.' " *Monell v. Department of Social Services,* 436 U.S. 658, 706,

## III

The language of the ADEA itself strongly supports our conclusion that no initial resort to state age discrimination remedies is required. The statute nowhere explicitly imposes a resort to state proceedings as a precondition to instituting federal suit. The provision most likely to have dealt with this subject—the jurisdictional provision—does not even suggest, let alone require, prior utilization of available state machinery. 29 U.S.C. §§ 626(c), (d), *as amended,* 29 U.S.C.A. §§ 626(c), (d) (Supp. 1 June, 1978). Similarly, the FLSA does not require nor intimate that prior resort to state administrative machinery is necessary to enforce its provisions. *Id.* §§ 216, 217. Indeed, the FLSA prescribes precisely the opposite procedure: a complainant is afforded a choice of forum to enforce the provisions of the statute. *Id.* § 216(b).

Nor can the ADEA be construed as even impliedly requiring resort to state remedies. Here 29 U.S.C. § 633 is relevant. The sole basis for suggesting a state resort requirement, i. e., that the language of 633(b) apparently tracks the state exhaustion provision found in Title VII, has been destroyed by *Lorillard.*[29] By contrast, three arguments derived from the statute itself, as well as other persuasive arguments, support the conclusion that we reach today.

First, the ADEA contains in addition to 633(b) the highly relevant subsection 633(a).[30] That provision provides that a federal action filed over sixty days after commencement of the state action *must supersede* the pending state proceeding.[31] It would indeed be incongruous to attribute an intent to Congress to mandate resort to state proceedings when those proceedings need not be concluded, and would in any event be necessarily superseded by the filing of a federal suit. In short, "the ADEA reflects less deference to state mechanisms than does Title VII." *Reich v. Dow Badiche Co.,* 575 F.2d at 377 (2d Cir. 1978) (Feinberg, J., dissenting); *accord, Gabriele v. Chrysler Corp.,* 573 F.2d 949, 954 (6th Cir. 1978).

Second, even if Title VII procedures were relevant to the interpretation of the ADEA, which *Lorillard* holds they are not, the particular language of the ADEA relevant here (section 633(b)) is not the same as that found in Title VII. As Judge Celebrezze has explained:

[An] important distinction exists between § 633(b) and § 2000e–5(c). The latter states that "no charge may be filed" until after the sixty-day waiting period. This prevents all federal action during the waiting period, since filing of a charge with the EEOC is a prerequisite to a Title VII suit in federal court. The

---

98 S.Ct. 2018, 2043, 56 L.Ed.2d 611, (1978) (concurring opinion) (brackets in original), *quoting Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting).

**29.** *Lorillard* aside, the relevance of the Title VII exhaustion requirement to enforcement procedures under the ADEA was suspect from the outset.

Most courts that have read § 2000e–5(c) as requiring such prior resort have done so because Title VII's legislative history is very clear on that point. *Dubois v. Packard Bell Corp.,* 470 F.2d 973, 975 (10th Cir. 1972); *Crosslin v. Mountain States Telephone & Telegraph Co.,* 422 F.2d 1028, 1030–31 (9th Cir. 1970), *vacated and remanded,* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971); *EEOC v. Union Bank,* 408 F.2d 867, 869–70 (9th Cir. 1968); *Stebbins v. Nationwide Mutual Insurance Co.,* 382 F.2d 267, 268 (4th Cir. 1967), *cert. den.,* 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968); *Ethridge v. Rhodes,* 268

F.Supp. 83, 89 (S.D.Ohio 1967). There is no similar legislative history accompanying § 633(b), so the rationale behind the prevailing interpretation of § 2000e–5(c) simply does not apply to § 633(b). . . .
*Gabriele v. Chrysler Corp.,* 573 F.2d 949, 953 (6th Cir. 1978).

**30.** Title VII contains no such provision. *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1212 (1971).

**31.** 29 U.S.C. § 633(a) reads in full:

Federal action superseding State action
  (a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.

sixty-day period gives the appropriate state agency two months of exclusive jurisdiction over the discrimination allegation. Section 633(b), on the other hand, says "no suit may be brought" until after the sixty-day waiting period. This only prohibits the filing of a complaint in the district court and contemplates possible concurrent administrative action by the state agency and the Department of Labor. *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 194, n. 8 (3d Cir. 1977) [*petition for cert. filed,* 46 U.S.L.W. 3695 (U.S. May 1, 1978) (No. 77–1562)]. The absence of a period of exclusive state jurisdiction under the ADEA is thus another indicia of lesser deference to the states under the ADEA than under Title VII. Again, this militates in favor of not requiring prior resort to a state agency before an ADEA suit in federal court.

*Gabriele v. Chrysler Corp.,* 573 F.2d at 954.[32]

Third, section 633 is entitled "Federal-State Relationship," not "Jurisdiction," nor "Procedural Prerequisites." These latter subjects are dealt with in an entirely different section of the statute, *see* n. 6 *supra,* thereby indicating that congressional concern as expressed in section 633 was restricted to notions of comity and federalism, not to jurisdictional prerequisites.

Additionally, we find it significant that the Secretary has urged that the ADEA affords complainants a choice of forum. "[S]uch a reasonable construction of an ambiguous statute by the agency charged with its administration is entitled to great deference." *Reich v. Dow Badiche Co.,* No. 76–7637, 575 F.2d at 377 (Feinberg, J., dissenting), *citing Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *accord, Goger,* 492 F.2d at 18 (concurring opinion). *See also Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 528, 98 S.Ct. 1197, 1204, 55 L.Ed.2d 460 (1978).

Indeed, Congress itself has recently expressed its views as they bear upon the issue before us.[33] The 1978 Congress, amending other provisions of the ADEA, left the entire section 633 intact, and did not effect any relevant changes in § 626.[34] Nevertheless the joint conference report which dealt with the very issue with which we are here concerned. The relevant section of the Senate Report adopted in the joint conference report reads as follows:

Section 14(b) of the Act [29 U.S.C. § 633(b)] provides that where an act of discrimination occurs in a State which has an age discrimination law and an agency empowered to grant or seek relief from such discriminatory practices, no suit may be brought under section 7 of this Act [29 U.S.C. § 626] before the expiration of sixty days after proceedings have been commenced under State law, unless such proceedings have been earlier terminated. This provision requires that if the individual chooses to apply first to the State agency for relief he must give the State the prescribed minimum period in which to take remedial action before he may turn to the federal courts for relief under the ADEA. *The provision does not require that the individual go to the State first in every instance.*

*Several courts have properly recognized this distinction.* See e. g., *Smith v. Jos. Schlitz Brewing Company,* 419 F.Supp. 770, 774 (D.N.J.1976) [*appeal pending,* No. 77–1745 (3d Cir., filed Mar. 28, 1977)]; *Vazquez v. Eastern Air Lines,* 405 F.Supp. 1353, 1356 (D.P.R.1975); *Bertrand v. Orkin Exterminating Company,* 419 F.Supp. 1123, 1126 (N.D.Ill.1976) [*reaffirmed,* 432 F.Supp. 952 (N.D.Ill.1977)]; *Goger v. H. K. Porter Company,* 492 F.[2d] 13, 17–18 (C.A. 3, 1974) (Garth, J., concurring).

---

**32.** *Accord,* Note, *Procedural Prerequisites,* 44 U.Chi.L.Rev. at 478–79.

**33.** Our examination of the legislative history which underlies the 1967 enactment of § 633(b) reveals no support for the proposition that initial resort to state remedies is required. The

absence of clear legislative history in this connection has also been recognized by the Sixth Circuit in *Gabriele v. Chrysler Corp.,* 573 F.2d at 953.

**34.** *See* n. 6 *supra.*

Other courts, however, have ruled that the complaint must go initially to the State authorities in every instance, and that the failure to do so requires dismissal of the federal action. *See Vaughn v. Chrysler Corp.,* 382 F.Supp. 143 (E.D. Michigan 1974); *Smith v. Crest Communities, Inc.,* 8 FEP Cases 1328 (W.D.Ky. 1974); *Fitzgerald v. New England Tel. & Tel. Co.,* 416 F.Supp. 617 (D.Mass.1976) [*vacated mem.,* 437 F.Supp. 635 (D.Mass. 1977)]; *see also Goger v. H. K. Porter Co.,* 492 F.2d 13 (C.A. 3, 1974).

*It is the committee's view that an individual who has been discriminated against because of age is free to proceed either under state law or under federal law. The choice is up to the individual.* However, as Section 14(b) makes clear, if the individual does choose to proceed initially under State law, he must give the State agency at least 60 days to take remedial action before he may commence a federal action.

S.Rep. 493, 95th Cong., 1st Sess. 6–7 (emphasis added), *reprinted in* [1978] U.S.Code Cong. & Admin.News p. 528, *adopted in* "Joint Explanatory Statement of the Committee of Conference," H.R.Conf.Rep.No. 950, 95th Cong., 2d Sess. 7, 12, *reprinted in* [1978] U.S.Code Cong. & Admin.News pp. 533.

It is a rare and welcome event to discover legislative history so unambiguous. Slightly more problematic however is the impact of a 1978 joint committee report on our interpretation of a 1967 enactment. Certainly the intent of the 1978 amenders of the ADEA cannot be said to represent or reflect the intent of the 1967 Congress: there is no necessary relation back.[35] Yet an interpretation of the ADEA which was feasible, if not preferable, before 1978 has now been officially ratified by the joint congressional committee assigned to study and recommend changes in the statute. We recognize, as did the Supreme Court, that although the views of a subsequent Congress "provide no controlling basis" for inferring original congressional intent, "[n]onetheless, it is pertinent to note [the views of a subsequent congressional committee] . . . reporting . . . on certain proposed amendments to the Act." *Haynes v. United States,* 390 U.S. 85, 87–88 n. 4, 88 S.Ct. 722, 725, 19 L.Ed.2d 923 (1968). In *Haynes* the Supreme Court was referring to the House Ways and Means Committee which reported on amendments to the National Firearms Act. *A fortiori* the views of a joint congressional committee are entitled to consideration and weight in our re-examination of the contours of sections 626(d) and 633(b) of the ADEA.

Finally, it is appropriate to consider whether a state resort requirement read into 29 U.S.C. § 633(b) would effectuate or frustrate the purposes of the ADEA. In this regard, we are cognizant of those arguments advanced by the proponents of prior state resort. We appreciate for example the fact that by allowing state agencies to process age discrimination complaints in the first instance, relief may be given to congested federal court calendars. We also acknowledge that a sixty-day wait to which claimants would be subjected under section 633(b) is rather minimal in light of the expected length of the overall proceedings.

Even recognizing these arguments as well as the other advantages which may be attributed to a prior resort procedure, we are nevertheless mindful that the ADEA is remedial legislation and is entitled to be liberally construed. *Gabriele v. Chrysler Corp.,* 573 F.2d at 954; *Skoglund v. Singer Co.,* 403 F.Supp. 797, 801 (D.N.H. 1975); *see Goger v. H. K. Porter Co., Inc.,* 492 F.2d at 17. As such in the absence of congressional expression, we should be

---

**35.** *Haynes v. United States,* 390 U.S. 85, 87 n. 4, 88 S.Ct. 722, 725, 19 L.Ed.2d 923 (1968) ("[t]he views of a subsequent Congress of course provide no controlling basis from which to infer the purpose of an earlier Congress"); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960) ("the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"); *see United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); *Rainwater v. United States,* 356 U.S. 590, 593, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958).

chary about creating unnecessary procedural bars which may, at the outset, require the dismissal of otherwise meritorious age discrimination claims. Moreover, it seems anomalous to us that deference must be accorded to state agency procedures when it is a *federal* right that is sought to be vindicated. Indeed, it should not be overlooked that whatever might be said in favor of requiring the initiation of procedures before a state agency, section 633(a) by its terms has always permitted total disruption of state proceedings (once sixty days have passed), by requiring that a federal suit supersede any state action.

On balance therefore we do not hesitate to conclude that the ADEA's purposes would be frustrated rather than fulfilled if we were to perpetuate a procedural requirement which in many instances would prevent an otherwise meritorious age discrimination claim from being considered.[36]

## IV

■ While it may be unusual for us to reject a court precedent announced by us but four years ago, when it becomes apparent that jurisprudential integrity demands no less, we will not shrink from undertaking that assignment. To expand upon the observation expressed by Judge Gibbons in *Cox v. Dravo Corp.*,[37] "[w]e should not countenance the continued application in this circuit of a rule, even of our own devising, which is patently inconsistent with the Supreme Court's pronouncements," and which does not take into account valid public policy concerns, congressional predilection, and

our own unease with a judicial impediment to remedial legislation. These considerations result in our now construing section 633(b) differently from the construction to which we subscribed four years ago in *Goger*. Accordingly, we now hold, contrary to our holding in *Goger*, that no prior resort to state agency procedures is required as a precondition to commencing a federal action charging age discrimination under the ADEA.[38]

The order of the district court will be reversed, and the case remanded for proceedings not inconsistent with this opinion.

JAMES HUNTER, III, Circuit Judge:

We again are presented with the question whether section 14(b) of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633(b), requires that a state administrative agency be given 60 days to attempt to remedy, usually by obtaining voluntary compliance, age discrimination in employment prior to an individual's resort to a federal court. The statute, as the court's opinion notes, does not by its plain text answer this question. In *Goger v. H. K. Porter Co.*, 429 F.2d 13 (3d Cir. 1974), a majority of a panel of this court held that such prior resort was required. The majority looked to the legislative history of the ADEA and found only a repetition of the statutory language and no guidance. 429 F.2d at 16. The language of section 14(b) was found to be substantially identical to the "state deference" requirement in Title VII of the Civil Rights Act of 1964, 42

---

**36.** In this circuit alone, we have had three examples of claimants who had not fulfilled what we characterized in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 844 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), as the "jurisdictional" requirement of resorting to prior state proceedings. In each instance however we recognized an equitable "outlet" which avoided the harsh result of dismissing the complaint because of this procedural bar. *Bonham v. Dresser Indus., Inc.*, 569 F.2d 187 (3d Cir. 1977), *petition for cert. filed*, 46 U.S.L.W. 3695, (U.S. May 1, 1978) (No. 77–1562); *Rogers v. Exxon Research & Engineering Co.*, 530 F.2d at 844; *Goger v. H. K. Porter Co., Inc.*, 492 F.2d 13 (3d Cir. 1974).

Our overturning of *Goger*'s state resort doctrine will now permit a more straightforward approach to fulfilling the remedial purposes of the ADEA—without our having to fashion equitable "savings" devices.

**37.** 517 F.2d 620, 627 (3d Cir.), *cert. denied*, 423 U.S. 1020, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975).

**38.** Our holding today also decides the question left unanswered by our court in *Marshall v. West Essex General Hosp.*, 575 F.2d 1079 (3d Cir. 1978): *a fortiori* the Secretary of Labor need not resort to state age discrimination remedies before prosecuting charges under the ADEA.

U.S.C. § 2000e–5(c). That section at that time, as now, requires resort to state procedures before a federal remedy is invoked. *E. g., Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). *See Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 357, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). While the majority recognized differences between Title VII and the ADEA procedures, it felt that the differences did not warrant departure, in the absence of congressional direction from the analogy to Title VII plainly suggested by the similar language of the two statutes. *See Northcross v. Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam); *United Shoe Workers of America v. Bedell,* 165 U.S.App.D.C. 113, 506 F.2d 174 (1974). Three courts of appeals have followed the reasoning of the majority opinion in *Goger. Evans v. Oscar Mayer & Co.,* No. 77–1692 (8th Cir. Apr. 5, 1978); *Reich v. Dow Badiche Co.,* 575 F.2d 363 (2d Cir. 1978); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975). *But see, e. g., Gabriele v. Chrysler Corp.,* 573 F.2d 949 (6th Cir. 1978).

The court has now looked again at the intent of Congress to interpret section 14(b), in light of the 1978 amendments to the Act. Although Congress did not amend the language of section 14(b) which relates to the issue before us, the Reports of the Senate and Conference Committees contained *en passant* references to the Committees' view of the role of state procedures in the Act's remedial scheme. While recognizing that this after-the-fact "legislative history" is pertinent, although not entitled to great weight, *see, e. g., Haynes v. United States,* 390 U.S. 85, 87–88 n. 4, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), the court has now concluded that Congress in 1967 intended that the victim of age discrimination is not

required first to seek a state remedy.[1] Prior resort to the state is to be left to the option of the employee.

The question of state deference in this context is purely a matter for the legislature. In the light of all the legislative material now before us, and in view of our experience with litigation under the Act, *see, e. g., Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3695 (U.S. May 1, 1978); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), the court's present decision is, in my view, appropriate.

---

1. The Court's opinion also relies on the recent Supreme Court decision in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), as undercutting the reasoning in *Goger.* While I agree that the Supreme Court pointed out the weakness of the analogy between Title VII and the ADEA in some contexts, I do not believe that *Lorillard* compels a wholesale rejection of such reasoning. For example, this court recently found such an analogy quite helpful in *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). *Lorillard* stands only for the narrow point that the provisions of the two statutes which affect the right to a jury trial are sufficiently different that they should not be construed *pari passu* on that particular question.