**Columbus B. RICKS, Appellant,**

v.

**DELAWARE STATE COLLEGE, Walton H. Simpson, William H. Davis, William G. Dix, Edward W. Hagemeyer, James C. Hardcastle, Delma Lafferty, James H. Williams, William S. Young, Burt C. Pratt, Luna I. Mishoe, Pierre S. DuPont, IV, M. Milford Caldwell, George W. McLaughlin, Romeo C. Henderson, Harriet R. Williams, Arthur E. Bragg, Ora Bunch, Ehsan Helmy, Vera Powell, John R. Price, Herbert Thompson, W. Richard Wynder, Ulysses Washington, Jane Laskaris, Individually and in their official capacities.**

No. 78–2565.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) July 10, 1979.

Decided Sept. 18, 1979.

Judith E. Harris, Harris & Kahn, Philadelphia, Pa., for appellant.

Schmittinger & Rodriguez, P. A., Nicholas H. Rodriguez, William D. Fletcher, Jr., Dover, Del., for appellees other than Ehsan Helmy.

Robert B. Young, Young & Schwartz, Dover, Del., for appellee Helmy.

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant Columbus B. Ricks has brought suit challenging his denial of tenure. The district court dismissed his claims as being untimely. Ricks has challenged the dismissal of two of those claims alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. We agree with Ricks that the dismissal of these claims was improper and we will, therefore, reverse and remand for further proceedings.

## I. THE FACTS AND PROCEDURAL HISTORY

Ricks, a black male Liberian, was employed by Delaware State College (the College) from 1970 to 1975 as a Professor of Education and Coordinator of Science Education. In February, 1973, he was denied academic tenure, but was given another one year contract. In February, 1974, the College's Committee on Promotions and Tenure again recommended that Ricks be refused tenure. The College's Board of Trustees met on March 13, 1974 and accepted that recommendation. In April, 1974, Ricks filed a grievance with the Education Policy Committee of the College. In May, 1974, this committee, after conducting a hearing, determined that the denial of tenure was proper. In June, 1974, the Board of Trustees notified Ricks that he was being given a terminal contract for the school year that ran from September 1, 1974 to June 30, 1975. His employment with the college

ceased on the latter date. On April 4, 1975, Ricks filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). On July 6, 1977, Ricks was sent a right to sue letter by the EEOC. On September 9, 1977, he filed a six-count complaint, alleging, inter alia, that he had been discriminated against on the basis of national origin in violation of Title VII and § 1981. The Title VII claim was dismissed for failing to file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred" as required by 42 U.S.C. § 2000e-5(e). The Section 1981 claim was dismissed as barred by the applicable statute of limitations. The other claims were also dismissed as untimely. On appeal, Ricks challenges only the dismissal of the Title VII and § 1981 claims.

## II. THE TITLE VII CLAIM

42 U.S.C. § 2000e-5(e) requires that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." The issue here is: From what date does this 180-day period run? Appellees argue and the court below concluded that it runs from no later than June, 1974 when Ricks was awarded his terminal one year contract. Ricks argues that it runs from June 30, 1975 when his contract actually expired and when he discontinued his services to the college.

In Bonham v. Dresser Industries, Inc., 569 F.2d 187 (3d Cir. 1977), cert. denied, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1979), this court faced a similar question in the context of a suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. In Bonham, the employee was notified on October 31, 1975 that he would be terminated as of December 31, 1975, but rendered no services after October 31, 1975. Like Title VII, the ADEA requires that a charge be filed "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d). The court in holding that the 180-day period began to run from the

earlier date, made it clear that its decision was based on a two-part test:

> The 180-day period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, *and the employee ceases to render further services to the employer.* Until that time he may have reason to believe that his status as an employee has not finally been determined, and should be given an opportunity to resolve any difficulty while he continues to work for the employer. In any event, a terminated employee who is still working should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future.

569 F.2d at 192. (emphasis supplied).

Given the identical wording of Title VII's and the ADEA's 180-day requirements, and the common humanitarian and remedial purpose of the two statutes, we perceive no reason to interpret the two requirements differently in this regard. *See Oscar Mayer & Co. v. Evans,* — U.S. —, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (Section 14(b) of the ADEA, 29 U.S.C. § 633(b), construed as having the same meaning as Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(c)); *Hart v. J. T. Baker Chemical Co.,* 598 F.2d 829 (3d Cir. 1979).[1] The Second Circuit has reached essentially the same conclusion on the basis of similar facts. In *Egelston v. State University College at Geneseo,* 535 F.2d 752 (2d Cir. 1976), the court held that Title VII's time limit runs from when the plaintiff left the university or possibly from when a replacement was hired, not from when the plaintiff was notified that her contract would not be renewed. Also, *see Noble v. University of Rochester,* 535 F.2d 756 (2d Cir. 1976) (Time runs on a claim of discriminatory promotion from when the person actually promoted assumes his duties, not from when that person assumed the title, but was unable to fully perform his new duties.)

The considerations supporting the results in *Bonham* and *Egelston* apply to this case as well. Although the tenure process is portrayed by appellees as a fixed and unchanging one, even a casual review of the cases in this area reveals instances in which seemingly final decisions have been reconsidered and sometimes reversed. *See, e. g., Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975) (notice of termination to co-worker of plaintiff later reversed); *Cap v. Lehigh University,* 433 F.Supp. 1275 (E.D. Pa.1977) (denial of tenure reconsidered, but affirmed). Thus in academia as well as in the business community, decisions are often changed and it is not desirable to encourage the initiation of litigation that might thwart any internal processes of conciliation and reconsideration. At this time, when the crowded federal docket is of such great concern to the courts and to the public, courts should be loathe to create rules that unnecessarily add those cases to the docket that could be amicably resolved. Forcing an employee to hire a lawyer or otherwise commence proceedings against his or her employer is also likely to have the negative side effect of reducing that employee's effectiveness during the balance of his or her term. Working relationships will be injured, if not sundered, and the litigation process will divert attention from the proper fulfillment of job responsibilities.

A final and compelling practical consideration supporting a broad application of the *Bonham* rule is that it provides a bright line guide both for the courts and for the vic-

---

1. In *Hart* we specifically recognized that the reasoning of *Bonham* is, in large measure, applicable in interpreting Title VII. 598 F.2d at 831–32. We referred there to this court's decision in *Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221 (3d Cir. 1978) (*in banc*), which held that the procedural requirements of the ADEA could not, in all respects, be considered analogous to those in Title VII. The Supreme Court, in *Oscar Mayer & Co.,* however, overruled our holding in *Holliday* and explicitly relied on Title VII in construing the procedural requirements of the ADEA.

tims of discrimination.[2] Under the appellees' formulation, courts would have to determine when purportedly final decisions are really final and when a reasonable person would really know or have reason to know that a final decision had been made. Besides creating complexity and thereby increasing the cost of litigation, this approach is likely to become a trap for employees who, through attempts at internal resolution of their grievances, would unwittingly lose the opportunity to make a timely filing of their charge. Such an approach would ignore the learning of *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), that courts, in construing the procedural requirements of Title VII, must be mindful that it is often laymen, not lawyers, who initiate the process.

Appellees contend that, even if June 30, 1975, the date of Ricks' termination of his employment, is the appropriate date from which the 180-day period should run, Ricks' filing was untimely because it was made *prior* to that date. Ricks responds that a continuing violation existed from the time he was initially denied tenure to the time that his contract expired and, therefore, his filing was timely. We agree.

■ Although employees, who have been informed that they will be terminated, should not be compelled to file charges prior to actually leaving their jobs, neither should they be penalized for doing so. A realistic appraisal of the situation compels the conclusion that, although the termination process is punctuated by several discrete events, it is, in fact, a process. There may be points during the early part of this process when a filing of charges would be premature. By the time the charge was filed here, however, approximately two months prior to the expiration of the contract, there was clearly no such problem.

Appellees rely on *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *Masco v. United Airlines*, 574 F.2d 1127 (3d Cir. 1978), in arguing that a continuing violation theory is not applicable in this context. In both of these cases stewardesses had been *actually* terminated and then attempted to obtain relief for these terminations by arguing that subsequent actions by the defendant (the refusal of seniority after rehire in *Evans*; the refusal to rehire in *Masco*) were part of a continuing violation.[3] In this case, however, no continuity is alleged between the actual termination and some subsequent action. Instead it is only alleged that the process of termination itself was a continuing one. Thus *Evans* and *Masco* are not in conflict with our decision here.[4]

## III. THE SECTION 1981 CLAIM

■ All parties agree that Delaware's three-year statute of limitations, 10 Del.C. § 8106, is applicable to Ricks' § 1981 claim. The question is whether the statute runs from the College's June 1974 award of a terminal contract to Ricks or from June 1975 when that contract expired. Our analysis of when Title VII's 180-day period be-

---

2. Other courts have also held that, as in *Bonham*, where an employee stays on the payroll beyond the time that he ceases his actual services to the employer, the 180-day period runs from the date that services ceased. *See International Union of Electrical, Radio and Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976); *Greene v. Carter Carburetor Co.*, 532 F.2d 125 (8th Cir. 1976); *Payne v. Crane Co.*, 560 F.2d 198 (5th Cir. 1977) (per curiam; ADEA suit).

3. In *Evans*, four years elapsed between the respondent's initial termination and her subsequent rehire. In *Masco*, there was approximately a three year period between the appellants' termination and their filing of charges with the EEOC. Thus the time periods in those cases involved years subsequent to the purported illegal termination and the removal of the stewardesses from the payroll.

4. Appellees also cite *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir. 1978), in which the court rejected the plaintiff's argument that his filing was timely as a result of events that occurred subsequent to the filing. Those subsequent events, which were never made the subject of an amended filing, were, like those in *Evans* and *Masco*, separate from the events that formed the basis of the earlier claim. Thus, *Smith* is not apposite to the question here of whether the expiration of the contract is properly considered a part of the termination process.

gins to run is also applicable to this question. We conclude, therefore, that the district court erred in dismissing this claim as barred by the statute of limitations.[5]

## IV. CONCLUSION

For the reasons stated above, we will reverse the dismissal of Ricks' claims under Title VII and § 1981.[6] Since he has not challenged the dismissal of his other claims, those dismissals will stand.

5. Appellees urge us to affirm the dismissal of the § 1981 claim on the alternative basis that claims of discrimination on the basis of national origin cannot be brought under § 1981. The district court noted, but did not decide, this question. We leave it to the district court on remand to make the initial determination on this contention.

6. Appellee, Ehsan Helmy, a member of the College's Tenure Committee, argues that, even if the dismissals are reversed as to the other appellees, the dismissal of the claims against her should be affirmed because she was not named in the EEOC complaint and because her only possible participation in the alleged discrimination took place in February, 1974. Neither of these arguments provides a basis for treating Helmy different from the other appellees on this appeal. Even though she was not named in the EEOC complaint, she may be named in the district court action if the parties actually named in the EEOC complaint adequately represented her interests before the EEOC. *See, Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 865 (3d Cir. 1977). The determination of the adequacy of this representation would require a factual record not yet compiled. With respect to the argument that her participation ended in 1974, if it is proved that she took part in a continuing violation, she would be liable despite the fact that her part in this violation occurred more than 180 days before the filing of charge.